No. 23-12580

# In the United States Court of Appeals
## FOR THE ELEVENTH CIRCUIT

ECB USA, INC., ATLANTIC VENTURES CORP.

*Plaintiffs - Appellants*

Versus

SAVENCIA CHEESE USA, LLC, ET AL.,

*Defendants - Appellees*

On Appeal from the U.S. District Court for the Southern District of Florida
No. 1:20-cv-21681-AHS

## APPELLEES' INITIAL BRIEF

Troy S. Brown
Su Jin Kim
Brian F. Morris
Morgan, Lewis & Bockius llp
2222 Market Street
Philadelphia, Pennsylvania 19103
troy.brown@morganlewis.com
su.kim@morganlewis.com
brian.morris@morganlewis.com
T. 215.963.5000
F. 215.963.5001

Michael J. Ableson
Morgan, Lewis & Bockius llp
101 Park Avenue
New York, NY 10178-0060
michael.ableson@morganlewis.com
T. 212.309.6113
F. 212.309.6001

*Counsel for Defendants/Appellees*

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Rule 26.1-1 of the United States Court of Appeals for the Eleventh Circuit, Defendants/Appellees Savencia Cheese USA, LLC, Alex Bongrain, Lewis Gitlin, Pierre Ragnet, Thomas Swartele, and J. Wild state as follows:

The following persons, associates, firms, partnerships, or corporations, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns ten percent of more of the party's stock, and other identifiable legal entities related to a party that have an interest in the outcome of this review include:

a.    Ableson, Michael (Counsel for Appellees)

b.    Akerman, LLP (Counsel for Appellants)

c.    Atlantic Ventures Corp., a Florida corporation (Appellant)

d.    Bongrain, Alex (Appellee)

e.    Bloom, Margot G. (Counsel for Appellees)

f.    Brown, Troy S. (Counsel for Appellees)

g.    Coates, Melissa M. (Counsel for Appellees)

h.    ECB USA, Inc., a Florida corporation (Appellant)

i.    Gitlin, Lewis (Appellee)

j.    Glasser, Jennifer (Counsel for Appellants)

k.    Kim, Su Jin (Counsel for Appellees)

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

l.      Kirkpatrick, John E. (Counsel for Appellants)

m.     Magolnick, Joel S. (Counsel for Appellants)

n.      Marko & Magolnick, P.A. (Counsel for Appellants)

o.      Marston, David W. (Counsel for Appellees)

p.      Miller, Zachary D. (Counsel for Appellees)

q.      Morgan, Lewis & Bockius LLP (Counsel for Appellees)

r.      Morris, Brian F. (Counsel for Appellees)

s.      Ragnet, Pierre (Appellee)

t.      Roman, Ryan (Counsel for Appellants)

u.      Savencia Cheese USA, LLC (Appellee)

v.      Singhal, Raag (United States District Court Judge)

w.     Swartele, Thomas (Appellee)

x.      Wild, J. (Appellee)

y.      Zausner Foods Corp. (Parent of Savencia Cheese)

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument because the district court committed no errors on such straightforward issues as lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Appellees do not believe that oral argument would assist the Court in clarifying or deciding the issues on appeal.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................C-3

PRELIMINARY STATEMENT ......................................................................C-11

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES............................................................................2

I.     OVERVIEW ...............................................................................................3

II.    STATEMENT OF THE CASE ...................................................................3

       A.    Procedural Background ....................................................................3

       B.    Factual Background...........................................................................5

             1.    The Deal ...................................................................................5

             2.    Alleged Conspiracy and Frauds ...............................................6

             3.    Appellees...................................................................................9

III.   STANDARD OF REVIEW .......................................................................11

IV.    SUMMARY OF THE ARGUMENT .........................................................12

V.     LEGAL ARGUMENT...............................................................................14

       A.    The District Court Correctly Determined it Lacked Personal
             Jurisdiction Over the Individual Defendants.....................................14

             1.    The District Court Correctly Determined it Lacked
                   Specific Jurisdiction................................................................16

                   a.    Individual Defendants Did Not Commit Tortious
                         Acts in Florida ..............................................................16

                   b.    Appellants' Conspiracy-Based Theory of Liability
                         of Personal Jurisdiction Still Fails ................................24

c.  Relatedly, Appellants Engage in Improper Group Pleading in a Failed Attempt to Establish Personal Jurisdiction .......................................................................27

2.  The District Court Correctly Determined that Exercising Personal Jurisdiction Would Violate Due Process .................29

B.  The District Court Correctly Dismissed Savencia Cheese for Appellants' Failure to State a Claim .................................................34

1.  Appellants Fail to State a Claim for Conspiracy against Savencia Cheese.......................................................................35

a.  Conspiracy to Commit Constructive Fraud ..................37

b.  Fraud ..............................................................................38

c.  Aiding and Abetting Breach of Fiduciary Duty ...........38

2.  Appellants Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty against Savencia Cheese ...............39

3.  Appellants Fail to State a Claim for Tortious Interference with Contract against Savencia Cheese ...................................40

VI.  CONCLUSION................................................................................44

CERTIFICATE OF COMPLIANCE ......................................................46

CERTIFICATE OF SERVICE ...............................................................46

# TABLE OF CITATIONS

**Page(s)**

### Cases

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) .......................................................... 12

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) .............................................. 38

*Barth v. All Hearts Homecare, LLC*,
  2018 WL 4282597 (S.D. Cal. Sept. 7, 2018) ...................................... 18

*Bentley v. Bank of Am., N.A.*,
  773 F. Supp. 2d 1367 (S.D. Fla. 2011) ............................................... 28

*Bortell v. White Mountains Ins. Grp., Ltd.*,
  2 So. 3d 1041 (Fla. Dist. Ct. App. 2009) ........................................... 43

*Calder v. Jones*,
  465 U.S. 783 (1984) .......................................................................... 30

*City of Ft. Lauderdale v. Scott*,
  773 F. Supp. 2d 1355 (S.D. Fla. 2011) ............................................... 28

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005) .......................................................... 35

*Cruise v. Graham*,
  622 So. 2d 37 (Fla. Dist. Ct. App. 1993) ........................................... 18

*Del Valle v. Trivago GMBH*,
  56 F.4th 1265 (11th Cir. 2022), *cert. denied sub nom. Expedia
  Grp., Inc. v. Del Valle*, 144 S. Ct. 90 (2023) .......................... 22, 29, 30

*Duty Free Americas, Inc. v. Estee Lauder Cos.*,
  797 F.3d 1248 (11th Cir. 2015) .......................................................... 41

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*,
  79 So. 3d 855 (Fla. Dist. Ct. App. 2012) ........................................... 35

*Estate of Scutieri v. Chambers*,
      386 F. App'x 951 (11th Cir. 2010) ................................................................20, 37

*Ethyl Corp. v. Balter*,
      386 So. 2d 1220 (Fla. Dist. Ct. App. 1980) ......................................................43

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*,
      752 So. 2d 582 (Fla. 2000) ................................................................................24

*Ferenchak v. Zormati*,
      572 F. Supp. 3d 1284 (S.D. Fla. 2021) ..............................................................19

*Francois v. Hatami*,
      565 F. Supp. 3d 1259 (S.D. Fla. 2021) ........................................................35, 36

*Greco v. SubGallagher Inv. Tr.*,
      2020 WL 4371841 (E.D. Pa. July 29, 2020) ................................................18, 33

*Hall v. Burger King Corp.*,
      912 F. Supp. 1509 (S.D. Fla. 1995) ..................................................................44

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
      43 F.4th 1303 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023)
      ........................................................................................................11, 14, 31, 32

*Horizons Rehab., Inc. v. Health Care & Ret. Corp.*,
      810 So. 2d 958 (Fla. Dist. Ct. App. 2002), *on reh'g* (Mar. 15,
      2002) ..................................................................................................................42

*Ice Portal, Inc. v. VFM Leonardo, Inc.*,
      2010 WL 2351463 (S.D. Fla. June 11, 2010) ....................................................41

*Internet Sols. Corp. v. Marshall*,
      39 So. 3d 1201 (Fla. 2010) ................................................................................22

*John Crane Inc. v. Shein Law Ctr., Ltd.*,
      2017 WL 1105490 (N.D. Ill. Mar. 23, 2017), *aff'd*, 891 F.3d 692
      (7th Cir. 2018)....................................................................................................18

*Joseph v. Bersten*,
      612 F. App'x 551 (11th Cir. 2015) ....................................................................27

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

*Julisa, LLC v. Avers*,
   2020 WL 13267753 (S.D. Fla. Nov. 4, 2020) ....................................................27

*Kaminsky v. Hecht*,
   272 So. 3d 786 (Fla. Dist. Ct. App. 2019) ........................................................21

*KrunchCash, LLC v. Craig*,
   2023 WL 2487230 (S.D. Fla. Mar. 13, 2023) ...................................................33

*Lee v. Caterpillar, Inc.*,
   496 F. App'x 914 (11th Cir. 2012) .....................................................................44

*Licciardello v. Lovelady*,
   544 F.3d 1280 (11th Cir. 2008) ...................................................................22, 30

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) .................................................22, 23, 30, 33

*McElrath v. ABN AMRO Mortg. Grp., Inc.*,
   2012 WL 463893 (S.D. Fla. Feb. 13, 2012) .....................................................37

*McKinney-Green, Inc. v. Davis*,
   606 So. 2d 393 (Fla. Dist. Ct. App. 1992) ...................................................41, 43

*Medina v. Lorenzo*,
   2004 WL 7337882 (D.N.M. June 16, 2004).................................................18, 32

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
   288 F.3d 1264 (11th Cir. 2002) .........................................................................14

*Metnick & Levy, P.A. v. Seuling*,
   123 So. 3d 639 (Fla. Dist. Ct. App. 2013) ........................................................21

*MP, LLC v. Sterling Holding, LLC*,
   231 So. 3d 517 (Fla. Dist. Ct. App. 2017) ........................................................39

*Naftali v. Capasso*,
   2015 WL 4483995 (S.D. Fla. July 22, 2015) ....................................................28

*Nw. Aircraft Cap. Corp. v. Stewart*,
   842 So. 2d 190 (Fla. Dist. Ct. App. 2003) ........................................................15

*Omega IM Grp., LLC v. Louidar, LLC*,
    2018 WL 1069446 (S.D. Fla. Feb. 16, 2018), *report and
    recommendation adopted*, 2018 WL 1875835 (S.D. Fla. Mar. 6,
    2018) .......................................................................................................31

*Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc*.,
    13 So. 3d 1090 (Fla. Dist. Ct. App. 2009) ..........................................42

*Pederson v. Frost*,
    951 F.3d 977 (8th Cir. 2020) ...............................................................17

*Posner v. Essex Ins. Co.*,
    178 F.3d 1209 (11th Cir. 1999) ...........................................................14

*Robey v. JPMorgan Chase Bank, N.A.*,
    343 F. Supp. 3d 1304 (S.D. Fla. 2018) ..........................................18, 30

*Rolls-Royce, PLC v. Spirit Airlines, Inc.*, 239 So. 3d 709, 714 (Fla.
    Dist. Ct. App. 2018) .............................................................................21

*Solomon v. Blue Cross & Blue Shield Ass'n*,
    574 F. Supp. 2d 1288 (S.D. Fla. 2008) ................................................28

*Sourcing Sols. USA, Inc. v. Kronos Am., LLC, TKS, S.A.*,
    2011 WL 13223514 (S.D. Fla. Jan. 26, 2011) .....................................41

*Tejera v. Lincoln Lending Servs., LLC*,
    271 So. 3d 97 (Fla. Dist. Ct. App. 2019) ........................................37, 38

*Teva Pharm. Indus. v. Ruiz*,
    181 So. 3d 513 (Fla. Dist. Ct. App. 2015) ...........................................15

*Trans Am Worldwide, LLC v. JP Superior Sols., LLC*,
    2018 WL 3090394 (N.D. Fla. Apr. 30, 2018) ......................................31

*Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S.
    Tower Condo. Ass'n, Inc.*,
    224 So. 3d 266 (Fla. Dist. Ct. App. 2017) ...........................................40

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ....................................14, 21, 25, 26

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
   314 F.3d 541 (11th Cir. 2002) ...............................................................5

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................16, 17, 24, 29

*Weisman v. S. Wine & Spirits of Am., Inc.*,
   297 So. 3d 646 (Fla. Dist. Ct. App. 2020).........................................26

*Wendt v. Horowitz*,
   822 So. 2d 1252 (Fla. 2002) ...............................................................23

*Wilcox v. Stout*,
   637 So. 2d 335 (Fla. Dist. Ct. App. 1994).........................................24

*Woods v. Barnett Bank of Ft. Lauderdale*,
   765 F.2d 1004 (11th Cir. 1985) ..........................................................40

*World-Wide Volkswagen v. Woodson*,
   444 U.S. 286 (1980)..............................................................................32

## Statutes

Fla. Stat. § 48.193(1)(a)(2) ...................................................12, 15, 16, 21

Fla. Stat. § 48.193(1)(a)(6) ...................................................................12

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## PRELIMINARY STATEMENT

For ease of reference and consistency, Appellees adopt the same record citation convention as Appellants.  Accordingly, the record below is cited as "DE [number] at [number]," referring to the docket entry number in the district court and the CM/ECF page number.  References to docket entries in this appeal are cited as "ECF No. [x] at [number]," with the page numbers citing to the as-filed PDF page, rather than the internal pagination of the document filed.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

# JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Florida had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). On November 22, 2023, Appellees submitted an affidavit from Pierre Ragnet, President of Zausner Foods Corporation, attesting that Savencia Cheese USA, LLC is a Delaware limited liability company, with its principal place of business in Pennsylvania, whose sole member is Zausner, which is incorporated in Delaware with its principal place of business in Pennsylvania. Declaration of Pierre Ragnet, ECF No. 16-2, ¶¶ 4-9. On December 4, 2023, this Court determined the District Court had subject-matter jurisdiction because of the complete diversity of the parties and stated the "appeal may proceed." ECF No. 22-2 at 3.

On April 12, 2023, the district court entered an order dismissing the claims against Alex Bongrain ("Bongrain"), Lewis Gitlin ("Gitlin"), Pierre Ragnet ("Ragnet"), Thomas Swartele ("Swartele"), and J. Wild ("Wild") (collectively, the "Individual Defendants") for lack of personal jurisdiction. DE 124. On July 10, 2023, the District Court entered an order dismissing the claims against Savencia Cheese USA, LLC ("Savencia Cheese") under Rule 12(b)(6). DE 127. ECB USA, Inc. ("ECB USA") and Atlantic Ventures Corp. ("Atlantic Ventures") (collectively, the "Appellants") filed a timely notice of appeal on August 8, 2023. DE 128. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## STATEMENT OF THE ISSUES

Whether the district court correctly determined it had no personal jurisdiction over the Individual Defendants based on Appellants' failure to establish a *prima facie* case of personal jurisdiction over the Individual Defendants and the uncontested sworn affidavits of the Individual Defendants.

Whether the district court correctly dismissed the substantive claims against Savencia Cheese for conspiracy (Counts III, V, and VI), aiding and abetting breach of fiduciary duty (Count IV), and tortious interference with contract (Count VII) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## I.  OVERVIEW

Plaintiffs-Appellants appeal the dismissal of their frivolous claims against the Individual Defendants for lack of personal jurisdiction, and against Savencia Cheese for failure to state a claim.  *See* DE 124 and 127.  The district court's orders should be affirmed in all respects.

First, the district court correctly concluded that Appellants, who bore the burden of proof, failed to:  (1) allege that the Individual Defendants, none of whom are Florida residents, had committed a tort in Florida to establish specific jurisdiction under Florida's long-arm statute, or (2) satisfy Due Process concerns.

Second, after scouring the First Amended Complaint ("Amended Complaint"), the district court correctly concluded that Appellants failed to state a claim against Savencia Cheese, the lone remaining defendant, and rightly dismissed those claims with prejudice.

## II.  STATEMENT OF THE CASE

### A. Procedural Background

Appellees do not dispute Appellants' "Course of Proceedings," but are constrained to supplement Appellants' procedural history as follows:  more than a year ***before*** filing this lawsuit, Appellants filed an identical lawsuit against Zausner Foods Corp. ("Zausner") and Savencia SA ("Savencia"), which is pending before

3

the District of Delaware. *See ECB USA, Inc. v. Savencia, S.A.*, No. 1:19-cv-00731-GBW-CJB (D. Del.) (the "Delaware Action").

Appellants had initially filed the Delaware Action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, despite the existence of a mandatory forum selection clause in the Stock Purchase Agreement ("SPA") under which Appellants asserted claims against Zausner, requiring that all disputes arising from the contract be filed in Delaware. After Zausner removed the case to federal court, it prevailed on a motion to transfer the case to the District of Delaware. *See* Delaware Action, DE 55. Following nearly five years of litigation, Zausner and Savencia filed motions for summary judgment, citing undisputed evidence that directly undermines Appellants' claims and requires dismissal. These motions have been fully briefed.

After the Southern District of Florida granted Zausner's motion to transfer, however, Appellants filed the present, identical lawsuit, this time against the Individual Defendants, who are current and former officers/directors of Zausner and Savencia, and against Savencia Cheese. DE 1. This was a blatant (and repeat) attempt to forum-shop and evade the SPA's mandatory forum selection clause.

Appellees moved to dismiss for lack of personal jurisdiction and for failure to state a claim. *See* DE 25, 26. Instead of filing an opposition to Appellees' motions, however, Appellants filed an Amended Complaint (DE 31), tacitly admitting their

4

original pleading was defective.  Appellees renewed their motions (DE 41, 42), and Appellants filed their oppositions without requesting further leave to amend a second time.  DE 51, 52.

Before the Southern District of Florida decided the transfer issue, it concluded it lacked personal jurisdiction over the Individual Defendants, and it dismissed the claims against Savencia Cheese with prejudice, thereby mooting the question of transfer.  DE 124 and 127.  In its Order dismissing all claims against Savencia Cheese with prejudice, the district court specifically observed that Appellants "have already amended their pleading once and have instituted identical claims against other parties in Delaware."  DE 127 at 9 (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) for the principle that "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

### B. <u>Factual Background</u>

#### 1. The Deal

Through the SPA, dated December 6, 2014, Appellants acquired Schratter Foods Inc. ("SFI"), an importer and distributor of cheese and other dairy products, from ZNHC, Inc. (a former subsidiary of Zausner that was later merged into Zausner).  DE 31, ¶ 14.  The deal Closed on December 31, 2014.  DE 31, ¶ 125.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

Under the SPA, Appellants were to pay $2 million of the purchase price at Closing, $15 million on June 30, 2015, and the remaining $10 million in Deferred Installment Payments, in four equal annual payments beginning on December 31, 2016. *Id.* ¶¶ 115, 125, 139. The Deferred Installment Payments were reduced to $6.1 million via Amendment No. 1 to the SPA, dated June 30, 2015. A third lawsuit is pending in the Southern District of Florida related to the non-payment of this $6.1 million. *See Zausner Foods Corp. v. Blandin*, No. 1:22-cv-22660-AHS (S.D. Fla.).

### 2. Alleged Conspiracy and Frauds

Appellants allege that Individual Defendants (and also somehow, Savencia Cheese), along with Zausner and Savencia, duped them into acquiring SFI by making a series of misrepresentations, primarily about the titles and roles of Alain Voss ("Voss"), their business partner in the acquisition and the decades-long manager of SFI. *Id.* ¶¶ 19-21, 28, 31, 40-57, 60-76, 84-87, 121. Appellants also alleged that Voss and SFI's CFO, Bertrand Proust ("Proust"), were part of a far-reaching conspiracy, and at an undisclosed time, the shadowy "Bongrain Defendants" "upon information and belief" paid Voss "secret sums" of money to induce him (*id.* ¶ 138), as SFI's then-President and CEO, to enter a June 2015 Distribution Agreement ("Distribution Agreement") that gave away valuable discounts that SFI purportedly had been guaranteed under the SPA. *Id.* ¶¶ 36-37, 40-57, 60-76. This is notwithstanding that Voss owned a 45% stake in SFI through

6

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, No. 23-12580

Appellant Atlantic Ventures Corp. and had every incentive to see SFI succeed.  DE 31, ¶¶ 95, 116.

Appellants expressly pleaded that "the senior members of ECB did not have permission to work in the United States" (*id*. ¶ 27) because they were ***not*** Florida residents at the time the SPA was negotiated (*i.e.*, they were French nationals residing in Guadeloupe).  *See* DE 41-1, ¶¶ 15-16; DE 41-2, ¶¶ 15-16; DE 41-3, ¶¶ 15-16; DE 41-4, ¶¶ 17-18; DE 41-5, ¶¶ 17-18.  Further, Appellant ECB was not created and incorporated in Florida until the day before the SPA was executed.  DE 31, ¶ 115.  And Appellant Atlantic Ventures Corp. was created and incorporated in Florida three days ***after*** the SPA was executed.  *Id*. ¶ 116.

Thus, to establish Appellees' alleged "contacts" with Florida, Appellants allege they retained a Miami-based attorney, Richard Freeman, as one of their deal counsel.  *Id*. ¶¶ 78-79.  Deal-related communications, including the Letter of Intent, drafts of the SPA, and SFI's financial statements were exchanged with Appellants' principals (*i.e.*, Claude Blandin, Bruno Blandin, and Arno Leoni), who were not yet in the United States, and with Mr. Freeman in Miami.  *Id*. ¶¶ 40-57, 60-76, 78-79, 88, 111, 117, 124, 133.  Appellants also alleged that a password-protected data room set up by Zausner was accessed by their principals and attorneys, but of these individuals, only Freeman was in Florida.  *Id*. ¶¶ 77-80, 83, 92.  Appellants further

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

alleged that "[t]he escrow and payment arrangements associated with the transaction were made with Freeman in Florida." DE 31, ¶ 125.

To round out Appellees' purported "contacts" with Florida, Appellants allege that the SPA "was to be interpreted and enforced in accordance with Florida law, and the transaction was to close in Miami, Florida, at Morgan Lewis & Bockius' office at 200 Biscayne Blvd., Suite 5300, Miami, Florida 33131." *Id*. ¶ 118.  This is a mischaracterization of the SPA, as the district court observed.  *See* DE 124 at 5 (citing complete portion of SPA, which stated Closing could occur in Miami "*or* remotely by the electronic exchange of executed documents and other deliverables, including by facsimile or e-mail, . . . *or* at such other time or on such other date or at such other place as Seller and Buyer may mutually agreed upon in writing . . . ." (emphases added)).  And as Individual Defendants attested in their sworn affidavits, which were not controverted by Appellants, Closing occurred **virtually** and not in Miami.  *Compare* DE 41-4, ¶¶ 14-15, *and* DE 41-5, ¶¶ 14-15, *with* DE 51-1.

Finally, although SFI had been headquartered in New Jersey for decades, after the deal Closed, Appellants decided to move SFI's headquarters to Florida in 2015, which for reasons not stated, was not complete until 2017.  DE 31, ¶¶ 62, 97, 143; *see also* DE 41-1, ¶ 11, DE 41-2, ¶ 11; DE 41-3, ¶ 11; DE 41-4, ¶ 11; DE 41-5, ¶ 11.  There are no allegations in the Amended Complaint concerning the residency of Voss or Proust, who are alleged to be non-party co-conspirators.

8

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

### 3. Appellees

There is no dispute that the Individual Defendants are not Florida residents. *See* ECF No. 17 at 18 ("The Individual Defendants are not residents of Florida."); *see also* DE 31, ¶¶ 6-10.  In fact, three of the five Individual Defendants are international defendants.  *See* DE 41-1, ¶ 4 (Alex Bongrain is a French citizen residing in Brussels, Belgium); DE 41-2, ¶ 4 (Tom Swartele is a citizen of the United States and Belgium who now resides in France);[1] DE 41-4, ¶ 4 (Pierre Ragnet is a citizen of the United States and France residing in France).

And although Appellants contend that "[t]he Individual Defendants, however, did not submit declarations contradicting the specific allegations in the Amended Complaint" (ECF No. 17 at 18), any cursory reading of the declarations belies that statement.  For instance, Individual Defendants Pierre Ragnet and Lewis Gitlin, the primary negotiators on behalf of ZNHC, Inc. and Zausner, swore that the deal did ***not*** close in Miami, as Appellants allege, but rather, the Closing was held virtually after final negotiations in France had concluded in December 2014.  *See* DE 41-4, ¶¶ 14-15; DE 41-5, ¶¶ 14-15.

The remaining Individual Defendants had little to no communications with Appellants' representatives and certainly none that were targeted at Florida.  For

---

[1] At the time of his sworn affidavit, Mr. Swartele resided in New York, but he now resides in France.

9

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

instance, Appellants allege that Alex Bongrain signed Alain Voss's employment letter for SFI, which was a New Jersey-based company, and Bongrain "informed Claude Blandin that he [Bongrain] had complete confidence and trust in Voss as the chief executive officer running a $200 million cheese company." *See* DE 31, ¶¶ 44, 72. Neither allegation shows any nexus to Florida. Further, Mr. Bongrain's uncontroverted sworn statement says that negotiations over the SPA took place in France, and he never traveled to Florida for any part of discussions regarding the sale of SFI to Appellants. *See* DE 41-1, ¶¶ 12-13.

Appellants' allegations as to Tom Swartele are even more sparse. At no point do Appellants allege anything that Mr. Swartele said or did that would subject him to personal jurisdiction in Florida. Instead, they engage in rampant and impermissible group pleading consisting of nothing more than conclusory allegations. *See* DE 31, ¶¶ 39, 44, 54, 58, 76, 107, 110, 123. To compound matters, Appellants fail to controvert Mr. Swartele's sworn statements that "[a]t no point before or after Closing did I ever communicate with Plaintiffs or their representatives, at any time, about any matter relating to the sale of SFI, the specifics of the SPA, the negotiations thereof, or the due diligence in connection therewith." DE 41-2, ¶ 17. Indeed, the first time he ever learned the names of Appellants was when he received a copy of the lawsuit after it was filed in April 2020. *Id*. ¶ 18.

Similarly, J Wild was not involved in direct negotiations with Appellants. *See* DE 41-3, ¶¶ 12-13. While he did recall participating in one telephone call with Bruno or Claude Blandin, he understood they were either in Guadeloupe or France at that time, and in any event, the majority of the conversation was in French, which he does not speak. *Id*. ¶ 17. He retired from SFI upon Closing in 2014. *Id*. ¶ 3.

Finally, Savencia Cheese is an affiliate of Savencia and Zausner. *See* ECF No. 17 at 19. Appellants' allegations against Savencia Cheese amount to nothing more than that it entered a new contract, the June 2015 Distribution Agreement, with SFI, which purportedly eliminated certain discounts that SFI anticipated receiving for 10 years under the SPA. DE 31, ¶¶ 36-41, 144-51.

## III.  STANDARD OF REVIEW

This Court "review[s] the district court's dismissal for lack of personal jurisdiction *de novo*, accepting the allegations in the complaint as true." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd*., 43 F.4th 1303, 1307 n. 1 (11th Cir. 2022) (affirming district court's dismissal for lack of personal jurisdiction under Florida's long-arm statute), *cert. denied*, 143 S. Ct. 736 (2023). "When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Id.* (citation omitted).

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

Similarly, "[a] district court's dismissal of a complaint with prejudice for failure to state a claim is subject to a *de novo* standard of review." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) (affirming district court's dismissal of lawsuit for failure to state a claim). Although the Court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff," nonetheless "the allegations must nevertheless state a claim for relief that is plausible—and not merely possible—on its face . . . ." *Id.*

## IV.    <u>SUMMARY OF THE ARGUMENT</u>

The District Court correctly determined that it lacked personal jurisdiction over the Individual Defendants because Appellants failed to allege that the Individual Defendants had committed a tort in Florida to establish specific jurisdiction under Florida's long-arm statute. *See* Fla. Stat. § 48.193(1)(a)(2), (6).[2] Further, the District Court was also correct in concluding that exercising personal jurisdiction would violate the Individual Defendants' Due Process rights.

---

[2] Although Appellants asserted personal jurisdiction under Fla. Stat. § 48.193(1)(a)(6) in their Amended Complaint, in their briefing, they did not address it and, as such, have waived that argument. Nevertheless, the district court explained why Appellants had not satisfied Fla. Stat. § 48.193(1)(a)(6), which requires injury to person or property. DE 124 at 6. Appellants also do not assert general jurisdiction as the basis for personal jurisdiction. *See* ECF No. 17 at 18.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

In addition, the district court correctly concluded that Appellants failed to state any claims upon which relief could be granted against Savencia Cheese, the lone remaining defendant, once the Individual Defendants were dismissed.

First, with respect to Appellants' conspiracy claims (Counts III, V, and VI),[3] the only allegations specific to Savencia Cheese related to the execution of the Distribution Agreement. Appellants, however, alleged no overt acts that Savencia Cheese took in furtherance of the conspiracy and thus failed to state a claim. Independently, as a matter of law, Appellants' claim for conspiracy to commit constructive fraud could not survive a motion to dismiss because conspiracy is not a standalone claim, and Appellants had not alleged an underlying constructive fraud claim against Savencia Cheese.

Second, with respect to both the aiding and abetting and tortious interference claims (Counts VI and VII), the district court concluded that Appellants had not even met the pleading standards of Rule 8. In addition to the reasons articulated by the district court, Savencia Cheese was justified in "interfering" with its own contracts with SFI by negotiating a new contract at arm's length.

---

[3] Because Counts I and II for fraud were asserted against the Individual Defendants only, the district court did not reach the issue of whether Appellants had adequately pleaded these claims. Accordingly, Appellees will not address Counts I and II in this brief.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## V.    LEGAL ARGUMENT

### A. The District Court Correctly Determined it Lacked Personal Jurisdiction Over the Individual Defendants

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "Fourteenth Amendment decisions have repeatedly emphasized the heavy burden faced by foreign defendants forced to litigate in U.S. courts . . . ." *Herederos*, 43 F.4th at 1308.

The plaintiff bears the burden of proving personal jurisdiction and must plead sufficient facts to establish a *prima facie* case of jurisdiction over a non-resident defendant's person. *Mazer*, 556 F.3d at 1274. "Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

The district court correctly determined that Appellants had failed to meet their burden of showing the existence of personal jurisdiction. DE 124 at 2. It noted that Appellants did not assert the Court had general jurisdiction over Individual Defendants, but instead relied on Fla. Stat. § 48.193(1)(a)(2) in an attempt to establish specific jurisdiction, which provides a basis for personal jurisdiction if the cause of action arises from the defendant or his agent having "committ[ed] a tortious act within" Florida. "Although the term 'arising from' does not mean proximately caused by, it does require direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiffs' cause of action and the defendants' business activity in the state." *Nw. Aircraft Cap. Corp. v. Stewart*, 842 So. 2d 190, 194 (Fla. Dist. Ct. App. 2003).

The district court also observed that Appellants failed to come forward with evidence controverting the sworn statements of the Individual Defendants, which established an absence of contacts with the state of Florida, including the non-occurrence of any tortious conduct in Florida. Thus, nothing in the Amended Complaint or the jurisdictional record demonstrates that any of the five Individual Defendants were "engaged in solicitation or service activities within" Florida that caused Plaintiffs to suffer an alleged injury. *See Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 518 (Fla. Dist. Ct. App. 2015) (finding that affidavit from defendant averring that "[i]ts board members do not meet, and have never met, in Florida,"

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, No. 23-12580

among other statements, was sufficient to shift burden to Plaintiff to come forward with controverting evidence).

### 1. The District Court Correctly Determined it Lacked Specific Jurisdiction

The Supreme Court has stated, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Yet, that is precisely how Appellants are attempting to frame their personal jurisdiction argument. Instead of focusing on the out-of-state Individual Defendants' (non-existent) contacts with Florida, Appellants emphasize their own conduct in Florida in an attempt to manufacture personal jurisdiction over the Individual Defendants.

### a. Individual Defendants Did Not Commit Tortious Acts in Florida

***First***, giving Appellants the benefit of the doubt, the district court stated that "[e]ven assuming the Amended Complaint states a claim for fraud and conspiracy, there are no facts alleged to support the conclusion that torts were committed in Florida" (DE 124 at 4) under Fla. Stat. § 48.193(1)(a)(2), because the "*only*" link to conduct in Florida was communications directed to Appellants' Miami-based deal counsel, which was "not enough to support a finding that torts were committed in Florida." DE 124 at 4-5 (emphasis in original). At most, the allegations Appellants rely on speak only to ***Appellants' own contacts*** with the state of Florida through their own deal counsel. *See* DE 31, ¶¶ 78-79, 83, 88, 92, 111, 117, 124-25

16

(references to communications with "Freeman in Florida" or "Freeman in Miami, Florida"); *see also* DE 51-1 (describing formation of Appellants, Appellants' retention of Miami-based counsel, actions taken by Appellants or their Miami-based counsel, etc.).  Even Appellants' allegations of communications directed to Florida post-Closing centered on those with their counsel, Richard Freeman.  *See* DE 31, ¶ 133 ("On February 23, 2015, Gitlin, at the direction of the individual members of the Bongrain Defendants, transmitted the audited financial statements from Wilmington, Delaware, and/or New Holland, Pennsylvania to, among others, Freeman, in Florida.").  As the district court shrewdly observed, "[t]he fact that Plaintiffs' lawyer was located in Florida does not mean that a tort was committed in Florida."  DE 124 at 7 n.3.

Indeed, adopting Appellants' arguments would mean that a plaintiff could gin up personal jurisdiction wherever it wanted, simply by retaining counsel in the desired forum state and forcing a defendant to communicate with that counsel. Courts have overwhelmingly rejected any such attempts to fabricate personal jurisdiction where there is none.  *See Walden*, 571 U.S. at 289, 291 (rejecting as "unavailing" reliance on the communications between the plaintiff's attorney in Nevada and the defendant police officer in Georgia to establish the existence of personal jurisdiction over the officer in Nevada); *Pederson v. Frost*, 951 F.3d 977, 980, 981 (8th Cir. 2020) (affirming dismissal for lack of personal jurisdiction even

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

though the defendants had directed "hundreds" of communications to a Minnesota-based attorney because there was "no allegation, however, that these communications were part of some broader effort by the defendants to create a connection with Minnesota," and "it is 'the defendant's contacts and conduct with the forum state *itself*' that are the focus, 'not the defendant's contacts' with people who happen to reside there.") (citation omitted); *Greco v. SubGallagher Inv. Tr.*, 2020 WL 4371841, at *10 (E.D. Pa. July 29, 2020) (observing that "[j]ust because a lawyer is from Philadelphia does not mean that his client is," because an attorney's location is not important in a personal jurisdiction inquiry and rejecting plaintiff's argument that defendants' communications with plaintiff and his attorney in Pennsylvania were sufficient to create personal jurisdiction over defendants, particularly in light of contractual mandatory forum selection clause in favor of Utah); *see also Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1319 (S.D. Fla. 2018); *Barth v. All Hearts Homecare, LLC*, 2018 WL 4282597, at *5 (S.D. Cal. Sept. 7, 2018); *John Crane Inc. v. Shein Law Ctr., Ltd.*, 2017 WL 1105490, at *7-8 (N.D. Ill. Mar. 23, 2017), *aff'd*, 891 F.3d 692 (7th Cir. 2018); *Medina v. Lorenzo*, 2004 WL 7337882, at *6 (D.N.M. June 16, 2004).

In the face of such overwhelming authority, Appellants can point only to *Cruise v. Graham*, 622 So. 2d 37, 39 (Fla. Dist. Ct. App. 1993), a case that has absolutely nothing to do with personal jurisdiction and stands for the uncontroversial

and self-evident proposition that parties can and do negotiate contracts through counsel, and such contracts are binding. *See* ECF No. 17 at 40.

Similarly, Appellants' reliance on a handful of post-Closing "contacts" with Florida not involving Mr. Freeman are unavailing because ***Appellants*** created those contacts, not Appellees. *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1294 (S.D. Fla. 2021) ("In this case, Plaintiff caused Defendant's contact with Florida that gave rise to Plaintiff's causes of action.") (finding no specific jurisdiction because the contract was negotiated and signed in Tunisia because one plaintiff was legally not permitted to be in the United States, plaintiffs admitted no meetings with defendant had taken place in Florida, and plaintiffs moved to the United States only after the deal closed).

Here, Appellants' principals were admittedly not permitted to work in the United States until after the deal closed. DE 31, ¶ 27. ***Appellants*** decided to move SFI's headquarters to Florida in 2015, though the move was not complete until 2017. *Id*. ¶¶ 62, 97, 143. And although Appellants now argue that Voss moved to Florida at some point post-Closing, there are no allegations actually stating so or anything specific other than that he was in Florida sometime post-Closing. *See* ECF No. 17 at 32, 51 (citing to paragraphs 143, 152, 217, 220, 221 of the Amended Complaint, which say nothing about Voss's residence or when he moved to Florida). Appellants make no reference to where Proust was based (or really what his role in any alleged

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, No. 23-12580

conspiracy was).  Appellants are forced to rely on such post-Closing "contacts" that they generated because Appellant ECB did not even exist as a Florida corporation until the day before the SPA was executed, and Appellant Atlantic Ventures Corp. was created and incorporated in Florida three days ***after*** the SPA was executed, thereby post-dating any allegations specific to any alleged representations that any of the five Individual Defendants might have made to any of the purported Appellants' representatives.  DE 31, ¶¶ 115, 116.  Such scant references to the measures that Appellants took to create contacts with the Individual Defendants are insufficient to show Individual Defendants are subject to personal jurisdiction in Florida.

Facing these jurisdictional headwinds, Appellants assert that it does not actually matter where the tortious conduct occurred, so long as the effects of such out-of-state tortious conduct are felt in Florida, no matter how attenuated.  *See* ECF No. 17 at 39, 43 (citing, for instance, *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955-56 (11th Cir. 2010), which actually affirmed the district court's dismissal of complaint for lack of personal jurisdiction and observed that "[i]mplicit in Mrs. Scutieri's assertions that the communications were in furtherance of a larger fraudulent scheme, is the fact that the fraudulent scheme had already been established elsewhere" and "the fact that Mrs. Scutieri lived in Florida when she was injured is an insufficient forum-state injury to trigger the long-arm statute").  But

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

that is an oversimplification of the law that would also effectively gut the Due Process inquiry and render it redundant (*see infra*, Section V.B.2).

Rather, "[t]he reach of the [Florida long-arm] statute is a question of Florida law.  [F]ederal courts are required to construe [such law] as would the Florida Supreme Court.  Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts."  *Mazer*, 556 F.3d at 1274 (alterations in original, citation omitted).  Florida courts analyze whether specific jurisdiction exists under Fla. Stat. § 48.193(1)(a)(2) "for any cause of action arising from" the commission of tortious acts in Florida. "This language necessarily focuses analysis not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. Dist. Ct. App. 2013) ("Here, the actions giving rise to the tortious interference claim occurred in New York, where Pirrotti allegedly convinced Seuling to breach her contract," and not in Florida); *see also Kaminsky v. Hecht*, 272 So. 3d 786, 788 (Fla. Dist. Ct. App. 2019) ("a majority of the district courts, including this court, have held that 'mere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a nonresident defendant.'") (dismissing tort claims because "[t]here are no allegations of acts or misconduct by Kaminsky in Florida"); *Rolls-Royce, PLC v. Spirit Airlines, Inc.*, 239 So. 3d 709, 714 (Fla. Dist. Ct. App. 2018).

*ECB USA, Inc. v. Savencia Cheese USA, LLC,* No. 23-12580

Further, in each of the cases Appellants cite, the out-of-state defendants ***targeted*** their communications to Florida via publicly accessible websites, which allegedly caused direct injuries in Florida (*i.e.*, ***none*** involved contacts solely to the plaintiff's counsel). *See Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1271 (11th Cir. 2022) (involving travel websites that were marketed to Florida residents and were actually used by Florida residents to book accommodations in Cuba), *cert. denied sub nom. Expedia Grp., Inc. v. Del Valle*, 144 S. Ct. 90 (2023); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013) (concluding the defendant had "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website" and had actually sold allegedly trademark infringing goods to Florida residents through that website); *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) (holding that the defendant's use of the Florida plaintiff's trademarked name and picture on a website accessible in Florida satisfied the effects test for personal jurisdiction because it entailed "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum."); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (limiting inquiry to "whether defamatory posts about a Florida corporation on an out-of-state website by the operator of the website constitute the commission of a tortious act within Florida under the long-arm statute," reasoning that defamatory posts would necessarily

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

cause reputational harm in the targeted forum); *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (involving Michigan-based defendant lawyer and law firm that had prepared documents that were sent to Florida and who had also communicated with Florida residents by phone and by letter and concluding that while "telephonic, electronic, or written communications into Florida *may* form the basis for personal jurisdiction," expressly declining to "determine whether personal jurisdiction" had "been established in this case") (emphasis added). The same cannot be said here, where Appellants argue that merely creating a password-protected data room that Appellants' retained lawyer accessed, is sufficient to create personal jurisdiction. ***None*** of these cases stands for that proposition.

Finally, contrary to Appellants' contentions, the deal did ***not*** close in Florida, as the operative contract (and the district court) recognized. DE 124 at 5 (citing DE 41[-6], Ex. 6 [at] 50) (allowing closing to take place "remotely by the electronic exchange of executed documents and other deliverables," which is what occurred)). Notably, the Declaration of Arno Leoni does not refute the contractual language or what actually happened. It only speaks of what ***Leoni himself*** may have (self-servingly) intended before the transaction closed. *See* DE 51-1. And his Declaration certainly does nothing to refute the sworn statements of the Individual Defendants that closing actually occurred remotely, and not in Florida. *Compare* DE 41-4, ¶¶ 14-15, *and* DE 41-5, ¶¶ 14-15, *with* DE 51-1; *see also Louis Vuitton*, 736 F.3d at

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

1347 ("Notably too, Mosseri's motion and affidavit did not deny, much less rebut, the complaint's detailed allegations that substantial quantities of counterfeit Louis Vuitton goods and products were being sold through the 'pendoza.com' and 'lazata.com' websites including to Florida consumers.").

Thus, regardless of Appellants' attempts to distract this Court with references to their own ties to Florida, the Individual Defendants did not – in any way, shape, or form – commit any tortious acts in Florida. *See Walden*, 571 U.S. at 285 ("the plaintiff cannot be the only link between the defendant and the forum.").

### b. Appellants' Conspiracy-Based Theory of Liability of Personal Jurisdiction Still Fails

**Second**, recognizing that Appellees have no ties to Florida, Appellants try to embrace the conspiracy theory of liability under Florida's long-arm statute, claiming that Alain Voss committed torts in Florida, and as a non-party co-conspirator, such conduct is sufficient to confer personal jurisdiction over all Individual Defendants. But even the cases Appellants rely on require them to allege the existence of a conspiracy, which they cannot do. *See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 583, 586 (Fla. 2000) (involving defendant who had already pleaded guilty to charges of conspiring to price-fix nationwide and finding that defendant was subject to personal jurisdiction based on allegations of price-fixing in Florida); *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) (finding personal jurisdiction only because one of the three co-conspirator defendants was

alleged to have committed tortious acts in Florida). And in fact, in *Mazer*, this Court affirmed dismissal for lack of jurisdiction over a Belgium-based defendant. *Mazer*, 556 F.3d at 1282-83 ("To tie APM to this conspiracy to steal in a manner adequate to support personal jurisdiction in Florida, UTC had to allege unambiguously that APM was involved in a Florida-based agreement to steal—*i.e.*, involved in a meeting of the minds with at least one other co-conspirator—*before* the time of the theft. . . . UTC has alleged nothing that clearly connected APM to a conspiracy made or carried out in Florida.").

As stated above, (i) Appellants did not actually exist until December 5 and December 9, 2014, respectively, (ii) their principals did not reside or work in Florida before Closing, (iii) SFI was headquartered outside of Florida before Closing, (iv) the move Appellants initiated of SFI to Florida was not completed until 3 years after Closing, and (v) Closing did not occur in Florida. Moreover, Appellants have simply ignored the statements in the Individual Defendants' respective declarations, and instead declared that their conspiracy allegations are purportedly unrebutted. That is not the case. *See* DE 41-1, ¶¶ 10-13, 18 (refuting any involvement in negotiations over the SPA, whether in Florida or France and disclaiming any communications "with Plaintiffs or their representatives, at any time, about any matter relating to the sale of [SFI], the specifics of the SPA, the negotiations thereof, or the due diligence in connection therewith"); DE 41-2, ¶¶ 10-13, 17-18 (also stating that he was

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, No. 23-12580

unaware of the buyers' identities until the Complaint was filed); DE 41-3, ¶¶ 10-13, 17; DE 41-4, ¶¶ 10-13; DE 41-5, ¶¶ 10-13.

Nor do Appellants actually allege anything that Voss (or any co-conspirator) did ***post***-Closing to advance a conspiracy.[4]  And there are no allegations of when Voss or Proust were in Florida.  There is simply too great an inferential leap between Appellants' allegations and the existence of a conspiracy sufficient to establish personal jurisdiction over all Individual Defendants.  *See Mazer*, 556 F.3d at 1282 ("Such inference cannot reasonably be made.  It requires too great a speculative leap to find that, just because he may have been in Florida at the time of the theft, Loetschert must have been involved initially in the plot to steal the blueprints.").

Finally, the district court correctly determined that the intra-corporate conspiracy doctrine precluded Appellants from "bring[ing] the Individual Defendants within the long-arm statute," because "[t]he misrepresentations alleged by Plaintiff occurred pre-closing; until the date of the closing, the Individual Defendants and the alleged non-party conspirators were employed by related companies. (DE [41] Ex. 1-5)."  DE 124 at 6 (quoting *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. Dist. Ct. App. 2020).  Appellants argue this

---

[4] As stated above, the only post-Closing allegation has to do with Defendant Gitlin's alleged transmission of inaccurate financial statements to Freeman in February 2015, allegedly in concert with the "Bongrain Defendants," who do not include Voss or Proust.  *See* DE 31, ¶ 133.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

was in error, contending "it would be 'premature to dismiss a conspiracy claim at the pleadings stage based on the intracorporate conspiracy doctrine where the complaint pleaded facts supporting a plausible inference that ***the individual defendants*** potentially had a personal stake in the alleged misconduct.'"  ECF No. 17 at 48 (emphasis added) (quoting *Julisa, LLC v. Avers*, 2020 WL 13267753, at *6 (S.D. Fla. Nov. 4, 2020)).  But Appellants' cited case proves Appellees' point:  there are ***no*** allegations that ***any*** of the Individual Defendants had a personal stake in ***any*** of the alleged conspiracies.  The only person alleged to have had any personal stake is Voss, who is not a defendant.  Further, in *Julisa*, the plaintiff and ***all*** of the individual defendants had been members of a limited liability company organized under the laws of Florida, which the plaintiff contended had been wrongfully dissolved to freeze the plaintiff out to the personal benefit of the individual defendants, who created a new company without plaintiff's membership.  *Julisa*, 2020 WL 13267753, at *1.  The Individual Defendants have no such ties to Florida here.

c.  Relatedly, Appellants Engage in Improper Group Pleading in a Failed Attempt to Establish Personal Jurisdiction

***Third***, as Appellees argued to the district court, Appellants engaged in improper group pleading in violation of the Eleventh Circuit's mandate that when a complaint "indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8." *Joseph v. Bersten*, 612 F. App'x 551, 555 (11th

27

Cir. 2015); *see also Naftali v. Capasso*, 2015 WL 4483995, at *4 (S.D. Fla. July 22, 2015). A complaint must allege facts to state a claim against each particular defendant. *See, e.g.*, *City of Ft. Lauderdale v. Scott*, 773 F. Supp. 2d 1355, 1362 (S.D. Fla. 2011); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373–74 (S.D. Fla. 2011).

Even after amendment, Appellants' operative pleading continues to lump together all Appellants as a single group (labeled, "Bongrain Defendants"), and then asserts nearly all of its allegations against that one undifferentiated group. *See* DE 31, ¶¶ 2, 11, 15-16, 23-31, 33, 35-36, 39-44, 50-51, 59, 62-63, 65, 68-75, 80, 82, 85-87, 91, 93, 94, 96, 98-100, 105-07, 109, 111-14, 117, 121-22, 124, 128-30, 132-33, 135-39, 144-48, 151-52, 154, 160. At times, Appellants list out each Individual Defendant instead of saying "Bongrain Defendants," but that does not cure the improper group pleading defect. *See id*. ¶¶ 39, 44, 58, 76, 107, 110, 123. As courts have recognized, this group pleading strategy is wholly improper. *See, e.g.*, *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008) (dismissing complaint for failure to "set out for each Defendant how the Defendant participated in the fraud").

Individual Defendants, through their sworn affidavits, have exposed Appellants' improper group pleading by attesting to the lack of ***any*** conduct aimed

at Florida or communications with Appellants or their representatives, which Appellants cannot overcome. *See supra* Section V.A.1.b.

### 2. The District Court Correctly Determined that Exercising Personal Jurisdiction Would Violate Due Process

Not only is specific jurisdiction lacking over Individual Defendants, exercising jurisdiction over Individual Defendants would violate their Due Process rights. As the district court concluded, "the Due Process Clause of the Fourteenth Amendment dictates that the Court lacks jurisdiction over the Individual Defendants." DE 124 at 6.

The Court examines "whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275 (citation omitted); *see also Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (citation omitted).

As stated above, Appellants' claims do not arise out of Appellee's "contacts with the forum state," only those contacts that Appellants manufactured, whether by

retaining Florida-based counsel or allegedly moving SFI and certain officers to Florida post-Closing.

In addition, there are two tests to determine whether Appellees purposefully availed themselves of conducting activities in the forum state: the effects test and the minimum contacts test. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). Appellants can meet neither standard, as there are no minimum contacts (*see supra* Section V.A.1.a), and not a single alleged contact was "aimed at" Florida, which Appellants' cited cases require. *See Del Valle*, 56 F.4th at 1276 ("The test is met when the tort was intentional, ***aimed at the forum state***, and caused harm that the defendant should have anticipated would be suffered in the forum state.") (emphasis added); *see also Lovelady*, 544 F.3d at 1287 (recognizing "that 'something more' is required under *Calder* than the mere 'foreseeability' that an act may have effects in the forum, and concluded that *Calder* requires that the defendant 'expressly aim' his wrongful conduct, individually targeting a known forum resident." (citations omitted)); *Louis Vuitton*, 736 F.3d at 1357 ("We are ***not*** saying that the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed.") (first emphasis added); *see also Robey*, 343 F. Supp. 3d at 1319 (holding in fraud case that, without more, even correspondence sent from a defendant to a party in the forum state is not sufficient to establish specific personal jurisdiction consistent with the Due Process Clause). This is in

30

stark contrast to Appellants' cited cases where the Due Process Clause was deemed satisfied. *See Trans Am Worldwide, LLC v. JP Superior Sols., LLC*, 2018 WL 3090394, at *4 (N.D. Fla. Apr. 30, 2018) (finding purposeful availment because defendant's president had personally visited plaintiff in Florida numerous times to present a formal business proposal and to personally deliver an engine that defendant built for plaintiff, among other specific acts); *see also supra* Section V.A.1a.

Taken together, Appellants' allegations fall far short of showing that Appellees purposefully availed themselves of the "privilege of conducting activities in the state of Florida for the benefit and protection of its laws." *Omega IM Grp., LLC v. Louidar, LLC*, 2018 WL 1069446, at *13 (S.D. Fla. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018). In *Omega*, the Court concluded "it likely made no difference to the Defendant herein whether the financing entity was located in Florida or in some other state." *Id*. The same is true here. Indeed, the Court found no personal jurisdiction in *Omega*, even where the plaintiff had alleged a payment to the out-of-state defendant. *Id*. ("there is no indication that anything other than payment of the due diligence fees were to be made in Florida. On this issue, the minimum contacts requirement is not satisfied by a mere showing that a Florida party entered into a contract with an out-of-state party."). It is simply not enough that the alleged effects of Individual Defendants' alleged conduct were ***felt*** in Florida. DE 124 at 7 (citing *Herederos*, 43 F.4th at

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

1311).  Otherwise, under Appellants' theory, the personal jurisdiction inquiry would

begin and end with Florida's long-arm statute and never reach the Due Process

prong:

> Plaintiff in this case essentially drove Defendants' correspondence to New Mexico by unilaterally choosing a New Mexico attorney to represent him with regard to his 401k plan benefits. ***Defendant Intermex and its counsel, Horwitz, Horwitz, P.C. and Glast, were required to communicate with Plaintiff's counsel of choice. Plaintiff cannot create personal jurisdiction over a defendant in a forum by hiring counsel in that forum; Plaintiff's unilateral act of choosing New Mexico counsel cannot create for these Defendants the minimum contacts necessary to satisfy the due process requirement for the exercise of personal jurisdiction.***

*Medina v. Lorenzo*, 2004 WL 7337882, at *6 (D.N.M. June 16, 2004) (emphasis

added) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 298 (1980)).

Finally, the "fair play and substantial justice" prong considers (1) "the burden

on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3)

"the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the

interstate judicial system's interest in obtaining the most efficient resolution of

controversies." *World-Wide Volkswagen*, 444 U.S. at 292.  The burden on

Individual Defendants would be great, considering three of them live outside the

United States.  *See Herederos*, 43 F.4th at 1310 (affirming district court's dismissal

of Canadian corporation for lack of personal jurisdiction).  Moreover, the Individual

Defendants are already fact witnesses (some of whom have been deposed numerous

times) in the Delaware Action (and the other related action pending in the Southern

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

District of Florida), with several depositions having been taken in Paris, France.[5]

Further, ***Florida*** does not have an interest in adjudicating this dispute, considering that Appellants filed this lawsuit as a copycat follow-on lawsuit to the Delaware Action, in a patent attempt to avoid the mandatory forum-selection clause they agreed to in the SPA. *See Louis Vuitton*, 736 F.3d at 1358 ("Requiring two lawsuits when one would do makes little sense."); *KrunchCash, LLC v. Craig*, 2023 WL 2487230, at *11 (S.D. Fla. Mar. 13, 2023) ("given Defendants' reference to Plaintiff *already* involving Defendants in litigation in Maryland, the Court has substantial concerns over whether litigation in this District would violate traditional notions of fair play and substantial justice."); *Greco*, 2020 WL 4371841, at *10 (rejecting plaintiff's argument that defendants' communications with plaintiff and his attorney in Pennsylvania were sufficient to create personal jurisdiction over defendants, particularly in light of contractual mandatory forum selection clause in favor of Utah). Appellants are already pursuing relief against Zausner and Savencia in the Delaware Action (but only because the Southern District of Florida granted Zausner's motion to transfer the matter to the District of Delaware to enforce the

---

[5] At the time each Individual Defendant supplied his sworn affidavit in August 2020, none had yet been deposed in any of the related actions, so their affidavits did not contain statements about having to be deposed multiple times in multiple cases.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

mandatory forum selection clause), so the judicial system is already in the process of resolving this dispute.

Exercising personal jurisdiction over the Individual Defendants, who have no meaningful contacts with the state of Florida, would certainly offend traditional notions of fair play and substantial justice, and Appellants have offered no reason to depart from the district court's conclusion.

Thus, for all of the above reasons, Appellants have failed to show both specific jurisdiction and satisfaction of Fourteenth Amendment Due Process concerns, and accordingly, the district court lacked personal jurisdiction over Individual Defendants.

**B.** **The District Court Correctly Dismissed Savencia Cheese for Appellants' Failure to State a Claim**

As stated above, Appellants ***never*** sought leave from the district court to amend. DE 127 at 9 (observing that Appellants had not sought leave to amend after Appellees moved to dismiss and declining to *sua sponte* grant such leave). Nor do they now argue that if granted leave, they could allege facts that would withstand a motion to dismiss, and for good reason. This is because Appellants well know that the underlying facts conclusively demonstrate the opposite of their claims.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

### 1. Appellants Fail to State a Claim for Conspiracy against Savencia Cheese

In Florida, "[a] civil conspiracy requires:  (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. Dist. Ct. App. 2012) (citation omitted).  Further, when the claims involve conspiracy to defraud, as two of Appellants' claims do, the plaintiff must meet Rule 9(b)'s heightened pleading standard.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

The district court correctly dismissed Appellants' conspiracy-based claims because they alleged no overt acts in pursuit of a conspiracy, only the conspiracy itself, which is insufficient under Florida law.  *See* DE 127 at 5 (citing *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021) ("An overt act is an act 'done in pursuance of the conspiracy.'  Therefore, the act must be in furtherance of the conspiracy and not merely be the conspiracy itself.") (citation omitted)); and DE 127 at 6 ("the Distribution Agreement *was* the alleged conspiracy.").

Appellants perform mental gymnastics to contend they ***did*** allege actual overt acts, but their brief, and the Amended Complaint, bely their arguments.  In fact, Appellants expressly concede this point in their appellate brief:  "The Amended Complaint clearly alleges an overt act:  the execution of the distribution agreement

35

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

that gave away the special pricing discounts promised under the SPA."  ECF No. 17 at 58.

Appellants alleged only that the Appellees, "working with their co-conspirator Voss, caused Schratter to revoke and give away substantial pricing discounts and rights through the execution of a distribution agreement between Savencia Cheese and Schratter on June 30, 2015 (the 'Distribution Agreement')."  DE 31, ¶¶ 36, 37, 39, 146-47, 149-50; *see also id*. ¶¶ 183, 205, 214 (all containing same allegations that harm from conspiracy was "caused by Voss's execution of the Distribution Agreement.").   But these allegations prove the district court's point that "the Distribution Agreement *was* the alleged conspiracy," so there was no independently alleged overt act.  While Appellants repeatedly claim another overt act was that all co-conspirators "paid [Voss] millions," (ECF No. 17 at 59, 62, 65), the actual allegation was that "[b]ased upon information and belief, Voss was paid additional and secret sums by the Bongrain Defendants and/or Savencia for the role he played as their 'inside man' during the due diligence process."  DE 31, ¶ 138.  There are ***no*** allegations as to who paid Voss, when, or what amount (and there were no allegations that the amounts were in the millions).

The cases cited by the district court further underscore this point.  *See Francois*, 565 F. Supp. 3d at 1269 (dismissing conspiracy claim because only allegations in support were vague and conclusory accusations of "verbal and written

misrepresentations, ***along with the execution of the sales agreement***.") (emphasis added) (citation omitted); *McElrath v. ABN AMRO Mortg. Grp., Inc.*, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) (dismissing conspiracy claims because the allegations consisted of nothing more than conclusory allegations that the defendants "worked together to cover up the fraud" and "acted in a manner that is in active complicity" with each other, and the conspiracy was a transaction characterized as an "acqui[sition of] the [notes and mortgages] from ABN AMRO with full knowledge and notice of the fraudulent actions perpetrated by ABN AMRO against Plaintiffs.") (second alteration in original) (citations omitted). In other words, in each case, aside from vague and conclusory allegations, the only conspiratorial act alleged was the transaction itself. The same is true here.

Accordingly, the District Court correctly dismissed all conspiracy claims against Savencia Cheese (Counts III, V, and VI).

### a. Conspiracy to Commit Constructive Fraud

Another independent basis to dismiss Appellants' conspiracy to commit constructive fraud claim (Count VI), and one the district court did not reach, is that "[t]here is no freestanding cause of action in Florida for 'civil conspiracy.' In order to state a claim for civil conspiracy, a plaintiff must allege an underlying independent tort." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. Dist. Ct. App. 2019). Even Appellants' cited cases acknowledge this principle. *See Scutieri*, 386

F. App'x at 954 ("Florida courts do not recognize civil conspiracy as an independent tort, as 'the sufficiency of a complaint in such cases is to be determined by the otherwise tortious character of the acts alleged,'" so "if there is no underlying tort, there can be no conspiracy to commit the tort.") (footnote and citation omitted).

Because Appellants never asserted (and could not assert) an underlying claim for constructive fraud, their conspiracy to commit constructive fraud claim (Count VI) must be dismissed. Even if Appellants had asserted a constructive fraud claim, it would not have survived a motion to dismiss because the parties to the SPA indisputably dealt with each other at arms' length. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) ("Constructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other.").

### b. Fraud

Appellants did not assert an underlying fraud claim against Savencia Cheese, so any claim for conspiracy to commit fraud as against Savencia Cheese necessarily fails. *Tejera*, 271 So. 3d at 103.

### c. Aiding and Abetting Breach of Fiduciary Duty

Because Appellants' standalone aiding and abetting breach of fiduciary duty claim fails, so too, must their conspiracy to aid and abet breach of fiduciary duty claims. *Id.*; *see infra* Section V.B.2.

38

### 2. Appellants Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty against Savencia Cheese

On Appellants' aiding and abetting claim, the only allegations relevant to Savencia Cheese are limited, again, to the execution of the Distribution Agreement. DE 31, ¶ 187 ("Savencia Cheese also aided and abetted the breaches of fiduciary duty so that it could undermine the discounted cheese prices and distribution rights contained in the Stock Purchase Agreement."); *see also* DE 31, ¶¶ 194, 196.

To establish a cause of action for aiding and abetting, a plaintiff must allege: "(1) a fiduciary duty on the part of the wrongdoer; (2) a breach of fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *MP, LLC v. Sterling Holding, LLC*, 231 So. 3d 517, 527 (Fla. Dist. Ct. App. 2017) (citation omitted).

The district court correctly determined that Appellants' conclusory allegations and mere recitations of the elements of an aiding and abetting claim did "not meet the pleading standards of Rule 8," because the "First Amended Complaint contains no allegations that Savencia Cheese had knowledge of the existence of a fiduciary duty or a wrongful act on the part of Voss." DE 127 at 7; *see also infra* Section V.B.3 (citing ECF No. 17 at 62).

But in addition to these failings, Appellants fail to allege any act by Savencia Cheese that provided substantial assistance or encouragement to Voss, other than the

baseless assertion upon information and belief that Voss was paid "secret sums" at an unknown time by an unknown entity.  ECF No. 17 at 62 (citing case law dismissing conspiracy claims for failure to allege how the defendant provided substantial assistance in the wrongdoing); *see also Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo. Ass'n, Inc.*, 224 So. 3d 266, 267 (Fla. Dist. Ct. App. 2017) (affirming dismissal of aiding and abetting claim because the complaint "contained a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations that appellee substantially assisted or encouraged the wrongdoing.").

This is especially so where the specific act complained of (*i.e.*, the execution of a contract), was a routine part of Voss's work, as the decades-long leader of SFI. *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009-10 (11th Cir. 1985) (more particularized allegations "of complicity would be required for the alleged aider and abettor who conducts what appears to be a transaction in the ordinary course of his business").  Thus, dismissal of Appellants' aiding and abetting claim (Count IV) was appropriate.

### 3.  Appellants Fail to State a Claim for Tortious Interference with Contract against Savencia Cheese

Under Florida law, the elements of tortious interference with a contract are: "(1) [t]he existence of a contract, (2) [t]he defendant's knowledge of the contract, (3) [t]he defendant's intentional procurement of the contract's breach, (4) [a]bsence

of any justification or privilege, [and] (5) [d]amages resulting from the breach. *Sourcing Sols. USA, Inc. v. Kronos Am., LLC, TKS, S.A.*, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011) (quoting *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397–98 (Fla. Dist. Ct. App. 1992)).

The district court found that Plaintiffs allege no facts in support of their tortious interference claim, merely conclusory recitations of the elements of the claim. DE 127 at 8-9 ("The tortious interference claim against Savencia Cheese fails because there are no facts alleged that would show that Savencia Cheese committed an 'intentional and unjustified procurement of a breach' of the Stock Purchase Agreement. There are no facts alleged from which it could be inferred that *Savencia Cheese* induced Voss to sign the Distribution Agreement.") (citing *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1281 (11th Cir. 2015) (affirming dismissal because plaintiff "required to provide more than a formulaic recitation of the elements of its tortious interference claim") (internal quotation marks omitted)); *see also Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *11 (S.D. Fla. June 11, 2010) (granting judgment as a matter of law where plaintiffs did not show "*any* improper means other than a breach of contract").

While Appellants protest they did more than merely recite the elements of a tortious interference claim, their example undermines their argument: "[w]orking with co-conspirator Voss, Savencia Cheese *procured an intentional and unjustified*

*breach* of the discounted pricing and rights to distribute the Savencia products for a period of ten years *by the execution of the Distribution Agreement* which changed the terms upon which Schratter would purchase Savencia products." ECF No. 17 at 62 (citing DE 31, ¶ 146). This is a quintessential recitation of the elements of a tortious interference claim. Far from proving their point, Appellants have established Savencia Cheese's point.

Conversely, and as Savencia Cheese argued below, Appellants' own allegations demonstrate that Savencia Cheese was justified or privileged in entering a new contract, because it was not a disinterested third-party, but rather an affiliate of Zausner. DE 31, ¶ 11. "Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a . . . potential financial interest in how a contract is performed." *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc*., 13 So. 3d 1090, 1094-95 (Fla. Dist. Ct. App. 2009) ("An interested third-party accused of tortious interference is essentially 'interfering' with its own interests. This is not interference; it is freedom of contract."); *Horizons Rehab., Inc. v. Health Care & Ret. Corp*., 810 So. 2d 958, 964 (Fla. Dist. Ct. App. 2002) ("Under Florida law, a party is privileged to act, and his actions are non-actionable, if the actions are taken to safeguard or promote the party's own financial interests."), *on reh'g* (Mar. 15, 2002). To the extent that Savencia Cheese offered certain discounts to SFI pre-Closing and subsequently

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

"revoked" or altered those discounts with SFI post-Closing via a new contract with SFI, that is the quintessential nature of freedom of contract and not tortious interference.

In addition, as a matter of law, a party cannot interfere in its own contract. *See Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980) (holding cannot interfere with own undertaking); *Davis*, 606 So.2d at 397 ("The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other."); *see also Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1049 (Fla. Dist. Ct. App. 2009) (affirming dismissal where plaintiff alleged interference by principal for which he acted as an agent). Here, SFI was a signatory to both the SPA and the Distribution Agreement (old and new), while Savencia Cheese was a third-party beneficiary of the SPA and a party to the old and new Distribution Agreement.[6]

Under the SPA, "Seller or its Affiliates" were granted the "right to supply."

---

[6] The Distribution Agreement, a contract between SFI and Savencia Cheese, was executed ***after*** Appellants had full ownership of SFI. Appellants likely will argue that while they had full ownership of SFI, they were unaware of what Voss was doing. As Savencia Cheese argued below, even assuming Appellants were unaware that Voss had entered the Distribution Agreement, they have not alleged that Savencia Cheese was aware he was acting in secret.

(SPA, ¶ VI.19(a), DE 41-6 at 43).  Savencia Cheese is "an affiliate of . . . [Seller] Zausner[.]"  DE 31, ¶ 11.  And there can be no claim for tortious interference where the defendant itself was the "the source of the business opportunity [it] allegedly interfered with."  *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1538 (S.D. Fla. 1995) (alteration in original)(citation omitted); *see also Lee v. Caterpillar, Inc.*, 496 F. App'x 914, 916 (11th Cir. 2012) ("'Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered.'  Moreover, 'all parties to an interwoven contractual arrangement are [not strangers and therefore] not liable for tortious interference with any of the contracts or business relationships.'" (alteration in original) (internal citation omitted) (applying Georgia law)).  Thus, accepting all of Appellants' allegations as true, Appellants nonetheless fail to state a claim for tortious interference against Savencia Cheese (Count VII).

## VI.    <u>CONCLUSION</u>

Accordingly, the District Court's dismissal of all Individual Defendants for lack of personal jurisdiction and dismissal of all claims against Savencia Cheese should be affirmed in all respects.

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

Dated: January 3, 2024                    Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP

                                          */s/ Troy S. Brown*
                                          Troy S. Brown
                                          Su Jin Kim
                                          Brian F. Morris
                                          2222 Market Street
                                          Philadelphia, PA 19103-3007
                                          T: 215.963.5214
                                          troy.brown@morganlewis.com
                                          su.kim@morganlewis.com
                                          brian.morris@morganlewis.com

                                          Michael J. Ableson
                                          101 Park Avenue
                                          New York, NY 10178-0060
                                          T: 212.309.6113
                                          michael.ableson@morganlewis.com

                                          *Counsel for Defendants/Appellees*

*ECB USA, Inc. v. Savencia Cheese USA, LLC, No. 23-12580*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 10,430 words, inclusive of the Preliminary Statement, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and the Local Rules of this Court. This document complies with the typeface requirements of Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

*/s/ Troy S. Brown*
Troy S. Brown

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 3, 2024, I caused this Responsive Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the counsel of record.

*/s/ Troy S. Brown*
Troy S. Brown