# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Docket No. 23-12580

---

ECB USA, INC. AND ATLANTIC VENTURES CORP.,

*Plaintiffs-Appellants*,

v.

SAVENCIA CHEESE USA, LLC, ET AL.,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the Southern District of Florida
District Court Case No. 1:20-cv-21681-AHS

---

## APPELLANTS' REPLY BRIEF

---

Joel S. Magolnick, Esq.
Florida Bar No. 776068
Magolnick@mm-pa.com
John E. Kirkpatrick, Esq.
Florida Bar No. 386782
Kirkpatrick@mm-pa.com
Marko & Magolnick, P.A.
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000

*Attorneys for ECB USA, Inc. and
Atlantic Ventures Corp.*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Appellants ECB USA, Inc. and Atlantic Ventures Corp. submits the following Certificate of Interested Parties and Corporate Disclosure Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1-1 and 26.1-2 of the Rules of the United State Court of Appeals for the Eleventh Circuit:

1. Ableson, Michael (Counsel for Appellee)
2. Akerman, LLP (Counsel for Appellants)
3. Atlantic Ventures Corp. (Appellant)
4. Bongrain, Alex (Appellee)
5. Bloom, Margot (Counsel for Appellees)
6. Brown, Troy (Counsel for Appellees)
7. Coates, Melissa M. (Counsel for Appellees)
8. ECB USA, Inc. (Appellant)
9. Gitlin, Lewis (Appellee)
10. Glasser, Jennifer (Counsel for Appellants)
11. Kim, Su Jin (Counsel for Appellees)
12. Kirkpatrick, John E. (Counsel for Appellants)
13. Magolnick, Joel S. (Counsel for Appellants)
14. Marko, David (Counsel for Appellants)

15. Marko & Magolnick, P.A. (Counsel for Appellants)

16. Marston, David W. (Counsel for Appellees)

17. Miller, Zachary D. (Counsel for Appellees)

18. Morgan, Lewis & Bockius, LLP (Counsel for Appellees)

19. Morris, Brian F. (Counsel for Appellees)

20. Ragnet, Pierre (Appellee)

21. Roman, Ryan (Counsel for Appellants)

22. SARL Ets. Claude Blandin & Fils (Parent of Appellant ECB USA, Inc.)

23. Savencia Cheese USA, LLC (Appellee)

24. Savencia, S.A., BNGRF (Ultimate Parent of Appellee Savencia Cheese USA, LLC)

25. Singhal, Raag (United States District Judge)

26. Swartele, Thomas (Appellee)

27. Wild, J. (Appellee)

28. Zausner Foods Corp. (Parent of Appellee Savencia Cheese USA, LLC)

/s/ *Joel S. Magolnick*
Joel S. Magolnick

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CONTENTS.......................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT .......................................................... vi

ARGUMENT ..........................................................................................1

I.   The District Court had Personal Jurisdiction Over the Individual Defendants
    Because They Committed Tortious Acts in Florida ..............................1

   A. Introduction...................................................................................1

   B. The Individual Defendants Directed Their Fraudulent Communications at
      Florida.........................................................................................2

   C. Communications Directed to Freeman were the Same as Communications
      to the ECB Parties Because Freeman was Their Agent and Attorney ...........5

   D. The Individual Defendants are Subject to Jurisdiction in Florida Under the
      Conspiracy Theory of Jurisdiction .................................................7

      1.  The ECB Parties Allege the Existence of a Conspiracy ...........................8

      2.  The Individual Defendants Failed to Rebut the Conspiracy Allegations
         in the Amended Complaint........................................................9

      3.  The Intra-corporate Conspiracy Doctrine Does not Apply Because Voss
         had a Personal Stake in the Conspiracy and was not Employed by
         Zausner or Savencia Post-closing............................................12

      4.  There is Also Personal Jurisdiction Because the Entire Transaction and
         the Fraud were Directed at Florida, to Florida Corporations, With a
         Closing in Florida ......................................................................14

II.  The District Court Erred In Dismissing The Tort Claims Against Savencia .....16

A. The ECB Parties are not Required to Include a Free-Standing Tort Claim to Support Each Conspiracy Claim....................................................................16

B. The ECB Parties Allege that Savencia Committed an Overt Act in Furtherance of the Conspiracy....................................................................188

C. The ECB Parties' Well Plead Allegations Support a Claim for Aiding and Abetting a Breach of Fiduciary Duty ............................................................19

D. The ECB Parties' Well Plead Allegations Support a Claim for Tortious Interference with Contract ............................................................................22

E. Neither Savencia nor the District Court Addressed the ECB Parties' Claim for Conspiracy to Breach Fiduciary Duty .....................................................25

F. Conclusion .....................................................................................................25

CERTIFICATE OF COMPLIANCE......................................................................27

CERTIFICATE OF SERVICE ...............................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Bortell v. White Mountains Ins. Grp., Ltd.,*
   2 So. 3d 1041 (Fla. 4th DCA 2009) ............................................................ 24, 25

*Calder v. Jones,*
   465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ........................................ 1

*Cedar Hills Properties Corp. v. E. Fed. Corp.,*
   575 So.2d 673 (Fla. 1st DCA 1991) ............................................................ 13, 14

*Club Exploria, LLC v. Aaronson, Austin, P.A.,*
   21-11556, 2022 WL 884317 (11th Cir. Mar. 25, 2022) ...................................... 23

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott,*
   561 Fed. Appx. 882 (11th Cir. 2014) .................................................................. 17

*Cordell Consultant, Inc. v. Abbott,*
   11-80416-CIV, 2012 WL 12862804 (S.D. Fla. Dec. 5, 2012) ............................ 17

*Cruise v. Graham,*
   622 So.2d 37 (Fla. 4th DCA 1993) ...................................................................... 5

*Del Valle v. Trivago GMBH,*
   56 F.4th 1265 (11th Cir. 2022), *cert. denied sub nom. Expedia Grp., Inc. v. Del*
   *Valle*, 144 S. Ct. 90, 217 L. Ed. 2d 21 (2023) ..................................................... 2

*Donofrio v. Matassini,*
   503 So. 2d 1278 (Fla. 2d DCA 1987) ................................................................. 17

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.,*
   797 F.3d 1248 (11th Cir. 2015) .......................................................................... 22

*Ethyl Corp. v. Balter,*
   *386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980)* ............................................. 24

*Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.,*
   752 So.2d 582 (Fla.2000) ................................................................................. 8, 9

*Francois v. Hatami,*
  565 F. Supp. 3d 1259 (S.D. Fla. 2021) ................................................................19

*Greco v. SubGallagher Inv. Tr.,*
  CV 19-2922, 2020 WL 4371841(E.D. Pa. July 29, 2020) ....................................7

*Joseph v. Norman LaPorte Realty, Inc.,*
  508 So.2d 496 (Fla. 3d DCA 1987) ........................................................................6

*Karnegis v. Oakes,*
  296 So. 2d 657 (Fla. 3d DCA 1974) .....................................................................17

*KMS Rest. Corp. v. Wendy's Intern., Inc.,*
  361 F.3d 1321 (11th Cir. 2004) ............................................................................24

*Licciardello v. Lovelady,*
  544 F.3d 1280 (11th Cir. 2008) .........................................................................1, 4

*Machtinger v. Inertial Airline Servs., Inc.,*
  937 So.2d 730 (Fla. 3d DCA 2006) ........................................................................8

*Mancinelli v. Davis,*
  217 So.3d 1034 (Fla. 4th DCA 2017) ...................................................................14

*McElrath v. ABN AMRO Mortg. Group, Inc.,*
  11-62216-CIV, 2012 WL 463893 (S.D. Fla. Feb. 13, 2012) ...............................19

*N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Florida,*
  418 F.Supp. 3d 957 (N.D. Fla. 2019) ...................................................................14

*Pederson v. Frost,*
  951 F.3d 977 (8th Cir. 2020) ..................................................................................7

*Posner v. Essex Ins. Co., Ltd.,*
  178 F.3d 1209 (11th Cir. 1999) ..............................................................................2

*Refined Sugars Inc. v. S. Commodity Corp.,*
  709 F.Supp. 1117 (S.D. Fla. 1988) .........................................................................6

*SkyHop Techs., Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023) ...........................................................................1, 2

*Turnberry Vill. N Tower Condo. Ass 'n, Inc.* v. *Turnberry Vill. S. Tower Condo.*
    *Ass 'n, Inc.*, 224 So. 3d 266 (Fla. 3d DCA 2017) ................................................21

*Tejera v. Lincoln Lending Services, LLC*,
    271 So. 3d 97 (Fla. 3d DCA 2019).......................................................................16

*United Techs. Corp. v. Mazer*
    556 F.3d 1260 (11th Cir. 2009) ..............................................................................8

*Wendt v. Horowitz*,
    822 So. 2d 1252, 1253 (Fla. 2002) .........................................................................1

*Wilcox v. Stout*,
    637 So.2d 335 (Fla. Dist. Ct. App. 1994)............................................................8, 9

*Woods* v. *Barnett Bank of Ft. Lauderdale*,
    765 F.2d 1004 (11th Cir. 1985) ......................................................... 21, 22, 25

**Statutes**

18 U.S.C. §1030(e)(1)...............................................................................................1

Fla. Stat. § 48.193(1)(a) ...........................................................................................1

**Rules**

Fed.R.Civ. P. 12(b)(6)..............................................................................................25

Fed.R.Civ.P. 8 and 9 .................................................................................. 17, 20, 21

Federal Rules of Appellate Procedure and Rule 26.1-1 and 26.1-2 .........................2

Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure...............................29

Rule 32(a)(6) of the Federal Rules of Appellate Procedure ....................................29

## PRELIMINARY STATEMENT

The following terms used in Appellants' Initial Brief have the meaning set forth below:

"Atlantic" means Appellant Atlantic Ventures, Corp.

"Bongrain" means Appellee Alex Bongrain.

"ECB Parties" means, collectively, ECB USA, Inc., and Atlantic.

"Freeman" means non-party Richard Freeman, Esq.

"Leoni" means non-party Arno Leoni.

"Gitlin" means Appellee Lewis Gitlin.

"Individual Defendants" means, collectively, Bongrain, Gitlin, Ragnet, Swartele, and Wild.

"Ragnet" means Appellee Pierre Ragnet.

"Savencia" means Appellee Savencia Cheese USA, LLC.

"Savencia Companies" means Savencia Cheese, Zausner, ZNHC, and Savencia.

"Schratter" means non-party Schratter Foods Incorporated.

"SPA" means the stock purchase agreement dated December 8, 2014.

"Swartele" means non-party Thomas Swartele.

"Voss" means non-party Alain Voss.

"Wild" means Appellee J. Wild.

"Zausner" means non-party Zausner Foods Corp.

The record below is cited as "DE [number] at [number]," referring to the docket entry number in the district court and the CM/ECF page number. In the case of the Amended Complaint, the record cite will be "DE 31, ¶ [number].

## ARGUMENT

## I. The District Court had Personal Jurisdiction Over the Individual Defendants Because They Committed Tortious Acts in Florida

### A. Introduction

The only jurisdictional question before this Court is whether the Amended Complaint alleged that the Individual Defendants committed, or conspired to commit, intentional torts in Florida. If so, the Individual Defendants are subject to jurisdiction in Florida. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). In *Skyhop*, this Court found that the allegations that a non-resident transmitted two emails to Florida, the contents of which violated 18 U.S.C. §1030(e)(1), were sufficient to satisfy the connexity requirement of Fla. Stat. § 48.193(1)(a) and the due process clause of the Constitution.

As to the state requirements, this Court held that:

> Under Florida Supreme Court precedent, a tortious act "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida" so long as "the cause of action ... arise[s] from the communications." *Wendt*, 822 So. 2d at 1260. Indeed, that court characterized as "straightforward" and "clear [the conclusion] that the nonresident defendant's communications were made into Florida" when the defendant sent emails into Florida.

*SkyHop,* 58 F.4th at 1228. As to the due process requirements, this Court held:

> A nonresident defendant's single tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state. *Licciardello v. Lovelady*, 544 F.3d 1280, 1285–86 (11th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct.

1482, 79 L.Ed.2d 804 (1984)). To meet the test, the tort must have been "intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle*, 56 F.4th at 1276.

*SkyHop,* 58 F.4th at 1230.

It is black-letter law that every unrebutted factual allegation in the Amended Complaint must be taken as true in determining jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999). In its Answer Brief, the Individual Defendants make facially incorrect arguments that ignore or misrepresent the factual allegations in the Amended Complaint. As explained below, based on the actual facts alleged and the *Skyhop* analysis, reversal is required.

### B.     The Individual Defendants Directed Their Fraudulent Communications at Florida

The Individual Defendants argue that "Appellants emphasize their own conduct in Florida in an attempt to manufacture personal jurisdiction…." and "the allegations Appellants rely on speak only to Appellants' own contacts with the state of Florida…." ECF No. 25 at 28. These characterizations ignore the factual allegations in the Amended Complaint that the Individual Defendants sent electronic communications and emails containing fraudulent misrepresentations to Florida to induce the ECB Parties (Florida corporations) to sign the SPA to purchase Schratter for $27 million and close the purchase in Florida. The parties initially arranged for closing in Miami, Florida at the offices of Morgan, Lewis & Bockius. DE 31, ¶ 34.

However, in lieu of a live closing physically attended by all parties, the parties opted for the transaction to close in escrow at the Miami offices of the ECB Parties' attorney Freeman, who acted as the escrow agent as to both documents and money. Leoni declaration, DE 51-1; DE 31, ¶ 125.

The Individual Defendants' argument also ignores the tortious acts continuing post-closing, including Gitlin emailing financial statements containing misrepresentations to the ECB Parties and Freeman, their attorney in Florida. It also ignores that the Individual Defendants conspired with the ECB Parties' fiduciary Voss in Florida to induce the ECB Parties to sign the 1st Amendment to the SPA and pay the $15 million second installment of the purchase price from Florida. DE 31, ¶¶ 30, 136, 139. The Individual Defendants aided and abetted Voss's continuing breaches of his fiduciary duties in Florida by paying him millions of dollars and committing to pay him millions more for his participation in the conspiracy. *Id.*, ¶ 57. From the moment that Schratter moved to Florida in January 2015, until April of 2017 when Voss was terminated, the tortious acts continued in Miami. *Id.*, ¶ 62.

The focus of the ECB Parties' allegations is not on where Individual Defendants and their agents were located, but on the Individual Defendants' willful actions directed at Florida. Essentially, the Individual Defendants ask this Court to disregard their own willful acts directed at Florida, i.e. sending emails containing misrepresentations to Florida. They justify this argument by stating that they only

directed such communications to Florida because that is where the ECB Parties and their representatives happened to be. However, this argument ignores the fundamental principle that the Individual Defendants directed emails and other communications containing false statements ***to Florida***. The Individual Defendants could have chosen to direct their communications elsewhere, or, for that matter, chosen not to engage in fraudulent acts. What is relevant is where they directed their fraudulent communications. If the Court were to accept the Individual Defendants' logic, a person in Pennsylvania sending anthrax to a Florida resident in Florida would not be subject to jurisdiction in Florida. Their argument is absurd.

The Individual Defendants' argument also ignores this Court's binding jurisdictional precedent in *Skyhop*, *supra*, and *Licciardello v. Lovelady*, 544 F.3d 1280, 1287–88 (11th Cir. 2008), in which this Court made it clear that a single act directed at Florida constituting an intentional tort can provide a basis for jurisdiction:

> [t]he Court made clear that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum.

*Id*. at 1285 (citations omitted). Under this Court's precedent, the Individual Defendants are subject to personal jurisdiction in Florida because they directed fraudulent communications to Florida. In other words, it does not matter whether ECB Parties are life-long Floridians. Instead, what matters is that the Individual

Defendants made fraudulent misrepresentations in emails sent to the ECB Parties in Florida.

**C.     Communications Directed to Freeman were the Same as Communications to the ECB Parties Because Freeman was Their Agent and Attorney**

The Individual Defendants argue that this Court should ignore the communications containing fraudulent misrepresentations that they sent to Freeman in Florida because the ECB Parties had "retained a Miami-based attorney, Freeman, as one of their deal counsel." ECF No. 25 at 19. However, the ECB Parties have never argued that the location of their deal attorney provides a basis for personal jurisdiction over the Individual Defendants. Instead, the ECB Parties argue that the Individual Defendants subjected themselves to jurisdiction in Florida by sending communications containing fraudulent misrepresentations to Freeman in Florida.

Florida law is clear that communications to an attorney as the agent of a principal have the same effect as communications to the principal. "An attorney acts as the client's representative, and representations made to the attorney are representations made to that attorney's client." *Cruise v. Graham*, 622 So.2d 37, 39 (Fla. 4th DCA 1993) (citations omitted). There is no substantive difference between fraudulent misrepresentations made to a principal or to the agent or attorney of a principal. *See Refined Sugars Inc. v. S. Commodity Corp.*, 709 F.Supp. 1117, 1122 (S.D. Fla. 1988) ("The mere fact that defendant's misrepresentations were

communicated to Plaintiff's agent neither negates Defendant's liability nor the propriety of granting summary judgment. Florida law does not permit an individual to do indirectly what it prohibits that individual from doing directly.") (citation omitted); *see also Joseph v. Norman LaPorte Realty, Inc.*, 508 So.2d 496, 497 (Fla. 3d DCA 1987) ("The fact that Montgomery's alleged fraudulent misrepresentations were made to the plaintiffs' agent - a pool inspection company - cannot, as urged, negate the element of reliance as (a) the pool inspection company allegedly relied on these misrepresentations, (b) the plaintiffs relied on the pool company's report, and (c) the plaintiffs therefore relied through their agent on Montgomery's alleged misrepresentations."). The Individual Defendants cite no contrary authority. In other words, a fraudulent misrepresentation is a fraudulent misrepresentation, whether it is made to a principal or its agent. The Individual Defendants cannot avoid the jurisdictional consequences of their own tortious acts directed at Florida. It would not matter if Freeman was the ECB Parties' only attorney or one of many attorneys. What is important is that he was the attorney to whom the Individual Defendants directed their fraudulent misrepresentations.

The Individual Defendants misplace reliance on a series of cases involving attorneys, but that do not involve tortious or fraudulent communications sent to those attorneys. In *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020), the Eighth Circuit affirmed the dismissal of an action for lack of general jurisdiction over non-resident

defendants where the plaintiff (an attorney) was the only connection to Minnesota. The only proffered nexus to Minnesota was hundreds of telephone and email contacts related to plaintiff's client in Minnesota, but those communications were unrelated to the frauds. *Id*. By contrast, in the instant case, the communications that were directed to Freeman in Florida did contain fraudulent statements.

Similarly, in *Greco v. SubGallagher Inv. Tr.*, CV 19-2922, 2020 WL 4371841(E.D. Pa. July 29, 2020), the plaintiff alleged that defendants committed a tort outside of the state that resulted in injury inside the state. *Id.* at 8. The only connection that the plaintiff was able to show to the forum is that he told the defendants that he was from Philadelphia. *Id*. Just like *Pederson*, *Greco* did not involve an intentional tort directed at the forum state. The other cases proffered by the Individual Defendants in a string cite at page 18 also have no application to the instant case. This explains why the Individual Defendants did not bother to provide parentheticals.

### D. The Individual Defendants are Subject to Jurisdiction in Florida Under the Conspiracy Theory of Jurisdiction

Under Florida law, each conspirator in a conspiracy is subject to jurisdiction in Florida when other co-conspirators commit an act in furtherance of the conspiracy in Florida. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009). As this Court explained in *Mazer*:

Florida courts have held that the state's long-arm statute can support

personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida. *See Machtinger v. Inertial Airline Servs., Inc.,* 937 So.2d 730, 734–36 (Fla. 3d DCA 2006) (finding personal jurisdiction existed in Florida where conspiracy was made in Ohio but acts in furtherance of the conspiracy were done in and directed toward Florida); *Wilcox,* 637 So.2d at 337 ("if [plaintiff] has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of the state of Florida through its long-arm statute"); *see also Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So.2d 582, 584–85 (Fla.2000) (finding personal jurisdiction in Florida over participant in a nationwide price-fixing conspiracy in which some co-conspirators, but not the defendant at issue, made sales into Florida).

*Id*.

The Individual Defendants do not contest the above statement of law. Instead, they make the following four arguments: (a) the ECB Parties cannot allege the existence of a conspiracy; (b) the Individual Defendants rebutted the conspiracy allegations in their declarations; (c) the intra-corporate conspiracy doctrine bars the conspiracy claim; and (d) the Court should ignore Voss's role in the conspiracy because he is not a party to the lawsuit. Each will be addressed below.

### 1. The ECB Parties Allege the Existence of a Conspiracy

The Individual Defendants argue that "the cases Appellants rely on require them to allege the existence of a conspiracy, which they cannot do." ECF No. 25 at 36. This argument is contradicted by the Amended Complaint. The ECB Parties allege the formation of the conspiracy. DE 31, ¶¶ 39-45. They allege the purpose of

the conspiracy, *id.*, ¶ 39, the parties' agreement to enter into a conspiracy, *id.*, ¶¶ 40-41, and the recruitment and compensation of co-conspirator Voss to participate in the conspiracy, *id.*, ¶¶ 42-45. The Individual Defendants fail to address or rebut these allegations in their declarations. Accordingly, they must be accepted as true.

The Amended Complaint not only alleges the formation of the conspiracy, but, as set forth in the Initial Brief, it also describes the multiple pre-and-post-closing tortious acts committed in Florida in furtherance of the conspiracy. This is laid out in detail in the Initial Brief. *See* ECF No. 17 at 7-18, 45.

The Individual Defendants ask the Court to rely on the holdings of *Mazer, supra, Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.,* 752 So.2d 582, 583, 586 (Fla. 2000) and *Wilcox v. Stout,* 637 So.2d 335, 337 (Fla. Dist. Ct. App. 1994). This is ironic because each of these cases hold that the Florida long-arm statute supports the exercise of jurisdiction on all members of a conspiracy if one of the co-conspirators was alleged to have committed tortious acts in Florida. This is exactly why each of the Individual Defendants is subject to jurisdiction in the instant case.

## 2. The Individual Defendants Failed to Rebut the Conspiracy Allegations in the Amended Complaint

In the Answer Brief, the Individual Defendants make the following misrepresentation to this Court:

> Moreover, Appellants have simply ignored the statements in Appellees' respective declarations, ***and instead declared that their conspiracy allegations are purportedly unrebutted. That is not the***

> *case*. *See* DE 41-1, ¶¶ 10-13, 18 (refuting any involvement in negotiations over the SPA, whether in Florida or France and disclaiming any communications "with Plaintiffs or their representatives, at any time, about any matter relating to the sale of [SFI], the specifics of the SPA, the negotiations thereof, or the due diligence in connection therewith"); DE 41-2, ¶¶ 10-13, 17-18 (also stating that he was unaware of the buyers' identities until the Complaint was filed); DE 41-3, ¶¶ 10-13, 17; DE 41-4, ¶¶ 10-13; DE 41-5, ¶¶ 10-13.

ECF No. 25 at 25-26. There are two levels of misrepresentation in the foregoing statement. First, as to all of the declarations cited above, not a single one rebuts the allegations that all Individual Defendants entered into a conspiracy to commit fraud, constructive fraud, and breach of fiduciary duty. Moreover, not a single statement in any of the declarations bothers to address, much less rebut, the allegations of post-closing tortious acts in Florida. DE 41-1 through 5.

The second level of misrepresentation is the suggestion that the declarations of Wild, DE 41-3, Ragnet, DE 41-4, and Gitlin, 41-4, contain the same rebutting language ascribed in the quote above regarding communications directed to Florida. The declarations of Gitlin, Wild, and Ragnet make no such statements. The reason why it is a misrepresentation is because the Individual Defendants quote from Bongrain's declaration and string cite to the declarations of Wild, Ragnet, and Gitlin as if they made the same statement as Bongrain. They did not. It is clear that the Individual Defendants present the information in a manner designed to mislead because there is no other reason for using a string cite.

Aside from the misrepresentations, it also important to understand what neither Bongrain nor Swartele deny in their declarations - that both were board members of Schratter and approved the June 30 secret agreements which stripped Voss of his offices and authority, while allowing him to be held out as the extant CEO/president of Schratter. DE 31, ¶¶ 61-97. These are unrebutted allegations of overt acts in furtherance of the conspiracy.

What is also unrebutted as to Gitlin, Ragnet, and Wild is that they made fraudulent misrepresentations that were directed to Freeman in Florida and committed multiple overt post-closing acts in furtherance of the conspiracy, none of which is addressed in their declarations. Their statements that they "did not travel to Florida in connection [with] *sic* negotiations over the SPA," is a red herring.

Further, the declarations also fail to rebut the fact that Gitlin, Wild, and Ragnet made misrepresentations in Florida by providing access to the data room to Freeman from Florida. In other words, the declarations do not rebut the allegations of conspiracy in the Amended Complaint, as the Individual Defendants imply through their misleading string cite above.

In addition to the misrepresentation made by the Individual Defendants in the excerpted paragraph above, they also falsely state in their Answer Brief that "[n]or do Appellants actually allege anything that Voss (or any co-conspirator) did post-closing to advance the conspiracy." ECF No. 25 at 38. The most benevolent

explanation of the Individual Defendants' misrepresentations is that they just did not read the Amended Complaint before filing their Answer Brief. The allegations in the Amended Complaint include: Voss's actions as the president of Atlantic and president/CEO of Schratter, DE 31, ¶¶ 126-128, in which he continued to act as [the conspiracy's] "inside man," ¶ 129, and used these positions to mislead the ECB Parties in post-closing negotiations and due diligence, ¶ 130, execution of the 1st Amendment of the SPA, ¶ 136, unduly influencing Schratter's auditor Constantin Associates, LLP, regarding the financial statements delivered post-closing on February 23, 2015, ¶ 137, authorizing payment of the $15 million second installment, ¶ 139, and secretly executing the post-closing Distribution Agreement that undermined providing discounts and distribution rights to Savencia group products, ¶¶ 144-151. The acts listed above, which is by no means exhaustive, were taken in Florida.

In sum, the ECB Parties alleged a conspiracy in which co-conspirators, including Voss, committed tortious acts in Florida. Neither the fact of the conspiracy nor the acts in furtherance thereof are rebutted by the Individual Defendants' declarations.

### 3. The Intra-corporate Conspiracy Doctrine Does not Apply Because Voss had a Personal Stake in the Conspiracy and was not Employed by Zausner or Savencia Post-closing

As to the pre-closing period, the unrebutted allegations established that Voss

had "a personal stake" in the activities of the conspiracy that was "separate and distinct from the corporation's interest." *See Cedar Hills Properties Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991). The unrebutted allegations in the Amended Complaint establish Voss's personal stake was (i) to obtain a 45 percent interest in the shares of Schratter; (ii) to be appointed as president and a director of Atlantic Ventures; and (iii) to be employed as the CEO/president of Schratter. DE 31, ¶¶ 95, 116. As to the post-closing period of the conspiracy, Voss was not an agent or employee of any of the various corporate members of the conspiracy. ECF No. 17 at 35, 46, 47, and 48.

The Individual Defendants do not dispute the foregoing facts or the effect of personal stake or lack of affiliation. Instead, without any authority to support their argument, the Individual Defendants declare that the personal stake exception does not apply because "[t]he only person alleged to have had any personal stake is Voss, who is not a defendant." ECF No. 25 at 27.

It is black-letter law that a conspiracy requires a multiplicity of actors, meaning "a meeting of two independent minds intent on one purpose." *Cedar Hills Prop.*, 575 So.2d 673, 676. Because of this requirement, "a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." *Id*. If there are multiple officers in the same company and one of them has a personal stake, the multiplicity

requirement is satisfied, and a conspiracy exists on that basis alone. *See Mancinelli*

*v. Davis*, 217 So.3d 1034, 1038 (Fla. 4th DCA 2017). The personal stake principle

also applies to employees. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Florida*,

418 F.Supp. 3d 957, 1001 (N.D. Fla. 2019).

The Amended Complaint alleges that the co-conspirators reached an

agreement for a common purpose and that the conspiracy had a multiplicity of actors

because Voss had a personal stake therein pre-closing and was not employed by

corporations affiliated with the Individual Defendants post-closing. Accordingly, the

intra-corporate conspiracy doctrine does not apply.

> ### 4. There is Also Personal Jurisdiction Because the Entire Transaction and the Fraud were Directed at Florida, to Florida Corporations, With a Closing in Florida

The Individual Defendants make sweeping statements of fact in their Answer

Brief that the "[c]losing occurred **virtually** and not in Miami." ECF No. 25 at 20.

The only basis for the foregoing were the statements in Gitlin's and Ragnet's

declaration that "the SPA closed virtually on December 31, 2014." DE 41-4, 41-5.

However, this statement does not mean that the closing did not take place in Miami,

as alleged in the Amended Complaint. It only means that the parties were not

physically present at the closing table in Miami. However, both the unrebutted

allegations in the Amended Complaint and the declaration of Leoni establish that the

parties agreed to close in escrow at the offices of Freeman in Miami. Leoni's

declaration states:

> 8. In or about December 2014, ECB USA **deposited $2 million in Freeman's trust account at Suntrust Bank in South Florida** to pay the first installment of the purchase price of Schratter.

> 9. In December 2014, on behalf of the parties to the transaction, **Freeman took possession and held executed copies of transaction documents for the purchase of Schratter in escrow in his office in South Florida.**

> 10. At closing on December 31, 2014, **pursuant to instructions of ZNHC, Inc.** and ECB USA and Atlantic Ventures, **Freeman disbursed the $2 million installment** of the purchase price of Schratter to ZNHC's bank **from Freeman's account in South Florida.**

Leoni declaration, DE 51-1 (emphasis added). Likewise, Paragraph 125 of the Amended Complaint states, "[o]n or about December 31, 2014, Atlantic Ventures closed its purchase of Schratter's stock and paid the initial $2 million. The escrow and payment arrangements associated with the transaction were made with Freeman in Florida." Amended Complaint, DE 31, ¶ 125.

In sum, the Individual Defendants committed a fraud by making fraudulent representations to Freeman in Florida, with intent to defraud two Florida corporations into paying them millions of dollars, with a closing that was intended to take place in Florida, and did, in fact, take place at an escrow closing in Florida, and wherein money and signed documents were released and exchanged in Florida. After closing, the Individual Defendants continued their fraud in Florida by sending financial statements, replete with misrepresentations, to Freeman in Florida to

induce the ECB Parties to pay an additional $15 million dollars and continued their fraud by aiding and abetting Schratter's CEO/president Voss in breaching his fiduciary duties to the ECB Parties while surreptitiously working on behalf of the Individual Defendants and their corporations, all from Florida.

For the foregoing reasons, the Individual Defendants were subject to jurisdiction in Florida because they committed intentional torts in Florida. This Court should reverse the dismissal of the Individual Defendants for lack of personal jurisdiction.

## II. The District Court Erred In Dismissing The Tort Claims Against Savencia

### A. The ECB Parties are not Required to Include a Free-Standing Tort Claim to Support Each Conspiracy Claim

Savencia incorrectly argues that the ECB Parties' claims for conspiracy to commit fraud and constructive fraud must be dismissed because the ECB Parties "never asserted an underlying claim for constructive fraud" or fraud. ECF No. 25 at 50. This argument is based on a misunderstanding of *Tejera v. Lincoln Lending Services, LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019), which holds that "[i]n pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong," because "[t]here is no freestanding cause of action in Florida for 'civil conspiracy.'"

The requirement of identifying an underlying wrong does not mean that a

plaintiff must have a freestanding claim for such a wrong. Quite the opposite is true. A co-conspirator need not be guilty of each element of a tort to be liable as a co-conspirator. For liability, a co-conspirator "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his co-conspirators." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (citing *Karnegis v. Oakes*, 296 So. 2d 657 (Fla. 3d DCA 1974)).

This Court has repeatedly applied this principle to conspiracy claims. For example, in *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 Fed. Appx. 882, 884 (11th Cir. 2014), a case in which there was no stand-alone claim for fraud, this Court reversed the dismissal of a claim for conspiracy to commit fraud.[1] Quoting *Donofrio*, this Court made clear that the conspiracy claim only required that the defendant "know of the scheme and assist in it in some way to be held responsible for all of the acts of his co-conspirators." *Id*. (citations omitted).

In the instant case, the conspiracy claims are based on the underlying torts of fraud, constructive fraud, and breach of fiduciary duty. The factual underpinnings of the torts are plead in sufficient detail to meet the requirements of both Fed.R.Civ.P. 8 and 9.

---

[1] The fact that there was no stand-alone fraud claim is discussed in the reversed district court opinion. *See Cordell Consultant, Inc. v. Abbott*, 11-80416-CIV, 2012 WL 12862804, at *1 (S.D. Fla. Dec. 5, 2012).

### B.  The ECB Parties Allege that Savencia Committed an Overt Act in Furtherance of the Conspiracy

To frame the issue for this Court, the ECB Parties allege that Savencia committed an overt act in furtherance of the conspiracy to breach fiduciary duty and commit fraud and constructive fraud when it executed the Distribution Agreement. Savencia argues in its Answer Brief that Savencia did not commit an overt act because "the Distribution Agreement was the alleged conspiracy." ECF No. 25 at 47. This is circular nonsense.

The Amended Complaint alleges that the co-conspirators entered into a conspiracy to induce the ECB Parties to take Voss as a fiduciary, appoint him as AV's president and Schratter's CEO/president, and use him in those positions to breach his fiduciary duties to, among other things, undermine the valuable rights to discounts on cheeses, as agreed to in the SPA. DE 31, ¶¶ 28-41. The Amended Complaint also clearly alleges that the conspiracy required the participation of Savencia to undermine the contractual discount rights. *Id.,* ¶¶ 39-40. In order to accomplish this goal, Savencia had to sign a Distribution Agreement that relinquished the valuable discount rights, *Id*., ¶ 36, which Savencia did with its co-conspirator Voss.

Savencia knowingly entered into the Distribution Agreement that deprived the ECB Parties of the benefit of their deal. The act of entering into the Distribution Agreement is not the conspiracy, but an act in furtherance of the conspiracy. *Id.* In

fact, it was one of the most important post-closing acts in furtherance of the conspiracy.

No authority supports Savencia's tautology. The two cases that Savencia cites are inapplicable and taken out of context. In *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021), the district court dismissed the conspiracy claim because plaintiff did not allege an overt act but merely alleged that overt acts included "verbal and written misrepresentations, along with the execution of the sales agreement." *Id*. The court ruled that plaintiff had not plead "with particularity the verbal misrepresentations and did not identify written misrepresentations." *Id*. The *Francois* opinion addresses only the issue of particularity. *McElrath v. ABN AMRO Mortg. Group, Inc.*, 11-62216-CIV, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) also does not support Savencia's argument. As in *Francois*, the *McElrath* opinion dismissed the conspiracy claim because the complaint only alleged that defendant had "active complicity with" another defendant, without more. In other words, there was no particularity.

## C. The ECB Parties' Well Plead Allegations Support a Claim for Aiding and Abetting a Breach of Fiduciary Duty

Savencia argues that the district court correctly dismissed the ECB Parties' claim for aiding and abetting a breach of fiduciary duty for two reasons. **First**, Savencia argues that the claim fails because it is based upon the "execution of the Distribution Agreement." ECF No. 25 at 51. Savencia neither develops nor explains

the rationale behind this argument and cites no authority to support it. This summary might be longer than Savencia's development of the argument.

**Second**, Savencia argues that "[t]he district court correctly determined that Appellants' conclusory allegations and mere recitations of the elements of an aiding and abetting claim did 'not meet the pleading standards of Rule 8,' because the 'First Amended Complaint contains no allegations that Savencia had knowledge of the existence of a fiduciary duty or a wrongful act on the part of Voss.'" ECF No. 25 at 51, citing DE 127 at 7. This argument reorganizes and mischaracterizes the district court's order through the use of nonsequential quotes, such that the statement that Rule 8 was not satisfied is because the Amended Complaint contained no allegations of knowledge.

This is what the Order actually states in its correct sequence:

> The Amended Complaint contains no allegations that Savencia Cheese had knowledge of the existence of a fiduciary duty or a wrongful act on the part of Voss. To the contrary, Plaintiffs acknowledge that Voss was employed by Schratter. There are no facts to support the allegation that Savencia Cheese acted with "malicious disregard for Plaintiffs." These conclusory allegations do not meet the pleading standards of Rule 8.

DE 127 at 7. In other words, the court is stating that Rule 8 was not met with regard to the allegation of "malicious disregard…." There is no generous way to explain away Savencia's manipulation of the court's Order.

Regardless of Savencia's twisting of the text of the Order to suit its needs, the Order, in its unmanipulated form, is, in any event, mistaken when it states that there

are no allegations of "knowledge of the existence of a fiduciary duty or a wrongful act on the part of Voss." *Id.* The Amended Complaint alleges in detail that Defendants, including Savencia, not only knew that Voss was the ECB Parties' fiduciary, but also fraudulently induced Atlantic to take him as a fiduciary. DE 31, ¶¶ 27-29 The Amended Complaint also alleges that Savencia intentionally induced Voss into executing the Distribution Agreement in the wrongful effort to relinquish the agreed upon discounts in the SPA in violation of his fiduciary duties. DE 31, ¶¶ 36-39.

To the extent that Savencia is attempting to argue that there were no facts to support malicious disregard for the ECB Parties, Savencia is wrong. The Amended Complaint clearly alleges that Savencia intentionally provided substantial assistance to Voss in his breaches of his fiduciary duty by entering into the Distribution Agreement in the effort to undermine the ECB Parties' contractual right to substantial discounts on cheese. DE 31, ¶¶ 36-37. The intent to harm is malice.

In arguing that the Amended Complaint does not comply with the pleading requirements of Rule 8, Savencia misplaces reliance on *Turnberry Vill. N Tower Condo. Ass 'n, Inc.* v. *Turnberry Vill. S. Tower Condo. Ass 'n, Inc.,* 224 So. 3d 266, 267 (Fla. 3d DCA 2017) and *Woods* v. *Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1009-10 (11th Cir. 1985). *Turnberry* applies state court pleadings rules, not federal rules. Unlike the pleadings in the instant case, the complaint in *Turnberry*

mechanically recited the elements of a tortious interference claim, with nothing more. The Amended Complaint sets forth in detail the facts underlying the claim and applies them to the elements of the claim.

As for *Woods*, Savencia falsely characterizes the case as being about "allegations" and asserts that *Woods* required "more particularized allegations" of "complicity." ECF No. 25 at 52. However, *Woods* is not a pleadings case. In *Woods*, this Court affirmed entry of a judgment based on evidence, not the sufficiency of allegations. *Woods*, 765 F. 2d at 1006.

### D.     The ECB Parties' Well Plead Allegations Support a Claim for Tortious Interference with Contract

Savencia argues that the dismissal of the tortious interference claims should be affirmed for two reasons. **First**, Savencia argues that the claim is "merely conclusory recitations of the elements of the claim." ECF No. 25 at 53. **Second**, Savencia argues that it had a privilege to improperly use Voss's status as a fiduciary and CEO/president of Schratter to cause a breach of the SPA through the execution of the Distribution Agreement. *Id.* at 54. These arguments will be refuted below.

As to the first argument, the ECB Parties do not make a formulaic recitation of the elements of a cause of action for tortious interference. As stated in one of the cases relied upon by Savencia, the ECB Parties offer "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir.

2015).

Despite the detailed factual allegations in the Amended Complaint, Savencia quotes the district court and argues that "there are no facts alleged from which it could be inferred that Savencia induced Voss to sign the Distribution Agreement." ECF No. 25 at 53. This is simply untrue. The second element of a claim for tortious interference does not require inducement. It does require "the defendant's intentional procurement of the contract's breach." *See Club Exploria, LLC v. Aaronson, Austin, P.A.*, 21-11556, 2022 WL 884317 (11th Cir. Mar. 25, 2022). The ECB Parties allege that as part of the various schemes to harm them, Savencia knowingly entered into a Distribution Agreement that undermined the ECB Parties' contractual rights to discounts on cheeses for a period of ten years. DE 31, ¶ 146. This is the procurement of a breach of the SPA. The Amended Complaint also alleges that Savencia knowingly achieved this by entering into a secret contract signed by Voss as CEO/president of Schratter that eradicated those discounts. *Id.*, ¶¶ 36, 37. This is also the procurement of a breach of the SPA. Finally, the Amended Complaint explains how Savencia and its co-conspirators knew that Voss was the ECB Parties' fiduciary and paid him millions of dollars for his participation in the schemes. *Id.*, ¶ 57. This is an improper or wrongful means to secure the breach. There is no authority to support the argument that a party has a privilege to induce a fiduciary to breach his duties thereby procuring the breach of a contract.

Savencia also argues that its actions in using Voss as the vehicle to breach the SPA is privileged. However, Savencia has not cited a single case in which improperly procuring such a breach through a fiduciary was deemed privileged. In fact, any privilege is defeated when illegal or improper means to procure the breach of a contract is not privileged. *KMS Rest. Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) ("even where the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used. *Ethyl,* 386 So.2d at 1225–26 ("[S]o long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable.").

Without any basis in law or fact, Savencia also argues that it is not a stranger to the contract. ECF No. 25 at 54-56. However, Savencia was not a party or a third-party beneficiary to the SPA. Savencia did not have the authority to enforce the SPA. Savencia and Zausner are different business entities. Savencia has offered no authority for its proposition that this Court should look past the corporate formalities and find that it is something other than a stranger to the SPA.

Citing to *Bortell v. White Mountains Ins. Grp., Ltd.,* 2 So. 3d 1041, 1049 (Fla. 4th DCA 2009), Savencia ends its efforts to support the dismissal of the tortious interference claims with the argument that it cannot interfere with its own contract. However, *Bortell* does not support this argument. Instead, *Bortell* holds that an agent

cannot sue his principal for tortious interference with relationships involved in his principal/agency relationship. *Id*. at 1049. Thus, *Bortell* is irrelevant.

Finally, Savencia asserts that it cannot be guilty of tortious interference because it was a third-party beneficiary to the SPA. There is, however, no basis in the pleadings or the law for this argument and it should be disregarded.

### E. Neither Savencia nor the District Court Addressed the ECB Parties' Claim for Conspiracy to Breach Fiduciary Duty

This Court should reverse the dismissal of the ECB Parties' claim for conspiracy to breach fiduciary duty (Count V) because it is neither addressed by either the district court in its Order nor was it argued by Savencia in its Answer Brief. Because Savencia does not argue this in the Answer Brief, it has waived the argument.

### F. Conclusion

For the foregoing reasons, this Court should reverse the district court's Fed.R.Civ. P. 12(b)(6) dismissal of the claims against Savencia.

Date: February 23, 2024

**MARKO & MAGOLNICK, P.A.**
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000

By: /s/ Joel S. Magolnick
**Joel S. Magolnick, Esq.**
Florida Bar No. 776068
*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,178 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and the Local Rules of this Court. This document complies with the typeface requirements of Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

By: /s/ Joel S. Magolnick
Joel S. Magolnick, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel or parties of record.

Respectfully submitted,

/s/ Joel S. Magolnick
    Joel S. Magolnick